2014 ME 84

**Alayna J. LAPREL et al.**

v.

**Douglas J. GOING.**

**Docket No. Yor–13–415.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 29, 2014.
Decided: June 24, 2014.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, and JABAR, JJ.

PER CURIAM.

[¶ 1] Douglas J. Going appeals from a judgment entered by the Superior Court (York County, *Brodrick, J.*) after a nonjury trial in which the court found for Going's cousin, Alayna J. Laprel, and her husband, Neal G. Smith, on their claim for slander of title and for Laprel on her claim for libel. Going also challenges a partial summary judgment that the court (*MG Kennedy, J.*) entered in favor of Laprel and Smith on their declaratory judgment claim to invalidate purported liens that Going recorded against their property. Among other arguments, Going challenges the jurisdiction of the Superior Court justices who entered these judgments, arguing that the justices lacked "commissions." Me. Const. art. IX, § 3. Laprel and Smith cross-appeal, arguing, among other things, that the court erred in reaching its findings and in failing to dismiss without prejudice their own claim for slander of title. We affirm the judgment.

## I.  BACKGROUND

[¶ 2] Because neither party has supplied a transcript or any acceptable substitute for a transcript pursuant to M.R.App. P. 5, we "assume that the transcript would support the trial court's findings of fact and its rulings on evidence and procedure." *Greaton v. Greaton,* 2012 ME 17, ¶ 2, 36 A.3d 913. The following facts are taken from the trial court's findings and the undisputed facts presented in the summary judgment process.[1]

Douglas Going, appellant pro se.

Jens–Peter W. Bergen, Esq., Law Office of Jens–Peter W. Bergen, Kennebunk, for appellees Alayna J. Laprel and Neal G. Smith.

1. Because Going refused to file an affidavit regarding his assets and income, *see* M.R. Civ. P. 91(a)(2), (f)(1), the trial court denied his request to proceed without paying filing fees or other fees. Although Going attempted to provide a copy of a CD audio recording in place of a transcript, he failed to obtain the approval of the trial court, *see* M.R. Civ. P.

[¶ 3] Going's mother and father owned land in joint tenancy. Going apparently hoped to receive or inherit that land from his parents. When his mother died, his father became the sole owner of the land. His father then lawfully sold the land to Laprel and Smith.

[¶ 4] Distressed that he did not receive from his father the land or any money from the sale, Going sent an email to another family member on January 6, 2011, saying that Laprel, who had recently retired from working at a bank as senior vice president for operations, was a thief. He stated that multiple authorities, including the FDIC and the attorney general, would be investigating Laprel's loan documents from the preceding ten years. Going has shown the email to another resident of Biddeford.

[¶ 5] About two weeks after sending the email, Going sent a "Notice of Demand" to Laprel and Smith that stated, "Alayna Laprel, from your early teenage years and into your adult life. You have been greedy, self centered, arrogant, a thief, diabolical, manipulative and incorporated all your mates into your financial and economic schemes and economic illegal land transactions."

[¶ 6] On April 8, 2011, Going purported to place a $550,000 "commercial lien" on various properties owned by Laprel and Smith, including the property they obtained from Going's father, and recorded it in the York County Registry of Deeds. Laprel and Smith sent letters to Going stating that, unless he removed the baseless lien and retracted his published statements calling Laprel a thief, they would

take legal action. Going did not remove the lien or retract the statements.

[¶ 7] On July 29, 2011, Laprel and Smith filed a complaint in the Superior Court containing the following counts: declaratory judgment seeking a declaration that the purported lien is baseless and Going has no interest in Laprel and Smith's property, slander of title, libel, slander, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. After this litigation began, Going purported to replace the lien with another baseless $600,000 "commercial lien," which he again recorded in the registry. Laprel and Smith later supplemented their complaint to add allegations about this attempted lien.[2]

[¶ 8] Over the course of about a year, Going, without legal representation, filed several motions to dismiss the complaint on various grounds. All of his motions were ultimately denied.

[¶ 9] In the midst of the filing of Going's motions, on December 15, 2011, Laprel and Smith moved for partial summary judgment on the declaratory judgment claim. In their memorandum in support of summary judgment, and soon thereafter in a footnote in their supplemental complaint filed on January 18, 2012, Laprel and Smith requested permission to voluntarily dismiss their claim for slander of title without prejudice. Although Going had moved to dismiss the entire complaint with prejudice, he opposed the motion for voluntary dismissal without prejudice.

---

91(f)(2)(B)(i), and, accordingly, we denied his request for the CD to become a part of the record on appeal. Laprel initially requested the production of a transcript, but no transcript was produced because she did not pay for it. *See* M.R.App. P. 5(b)(2)(B).

2. *See* M.R. Civ. P. 15(d) (authorizing a supplemental pleading to set forth "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented").

[¶ 10] Laprel and Smith later filed a supplemental motion for partial summary judgment with a statement of material facts based on Going's attempt to release the "commercial lien" that they initially complained of and to record a new $600,000 lien in the registry of deeds. The court granted Laprel and Smith's motion for partial summary judgment and later entered a recordable order declaring that both of the instruments that Going had recorded were "invalid and of no force or effect whatsoever." The court did not, in the summary judgment or in any other pretrial ruling, dismiss the claim for slander of title with or without prejudice.

[¶ 11] Going repeatedly requested a jury trial in 2013, but the court denied his requests because he failed to make the requests and tender payment of the $300 jury trial fee by March 22, 2012, the deadline established by the scheduling order. *See* Revised Court Fees Schedule and Document Management Procedures, Me. Admin. Order JB–05–26 § 1(A)(3) (as amended by A. 9–11) (effective Sept. 19, 2011).[3]

[¶ 12] The parties proceeded to a nonjury trial on July 19, 2013. The court found that Laprel had not acted unethically in obtaining any of her loans and that the statements that Going made about her were false. The court found for Laprel and Smith on their claim for slander of title, though it awarded them only nominal damages plus costs, and for Laprel on her libel claim, for which it awarded her $10,000 plus costs. On all other claims, the court found for Going without costs. After the court entered its final judgment, Going timely appealed, and Laprel and Smith cross-appealed. *See* 14 M.R.S. § 1851 (2013); M.R.App. P. 2(b)(3).

**II. DISCUSSION**

A. Challenges to the Court's Rulings, Findings, and Conclusions

■ [¶ 13] Without further discussion, we conclude that the court did not err in denying Going's motions to dismiss because he failed to supply a legal basis for dismissal of the complaint, which alleged facts supporting each cause of action. *See Ramsey v. Baxter Title Co.,* 2012 ME 113, ¶ 6, 54 A.3d 710. Nor did the court err in entering a summary judgment on the declaratory judgment claim because the evidence, considered in the light most favorable to Going, *see Estate of Lewis v. Concord Gen. Mut. Ins. Co.,* 2014 ME 34, ¶ 10, 87 A.3d 732, failed to demonstrate that he was a creditor of any kind who would be entitled to place a lien on Laprel and Smith's property. The court did not err or abuse its discretion in refusing Going's request for a jury trial. *See Butler v. Supreme Judicial Court,* 611 A.2d 987, 991 (Me.1992); *see also* M.R. Civ. P. 38(b). Finally, Going has not established any violation of due process in the proceedings. *See Kirkpatrick v. City of Bangor,* 1999 ME 73, ¶ 15, 728 A.2d 1268; *see also* M.R. Civ. P. 7(b)(7).

■ [¶ 14] We further conclude, contrary to the argument of Laprel and Smith, that the court did not abuse its discretion in reaching a judgment on the claim for slander of title given that Laprel and Smith did not file a separate motion for voluntary dismissal and did not raise the issue with the court after the entry of the partial summary judgment, at trial, or through a post-judgment motion. *See* M.R. Civ. P. 7(b), 41(a), 52, 59(e), 60; 3 Harvey, *Maine Civil Practice* § 41:1 at 30–32 (3d ed.2011). To the extent that

---

**3.** The $300 jury trial fee is also contained in the most recently promulgated administrative order. *See* Revised Court Fees Schedule and Document Management Procedures, Me. Admin. Order JB–05–26 § 1(A)(3) (as amended by A. 6–14) (effective June 1, 2014).

the parties have raised any other issues on appeal, apart from the issue of the Superior Court justices' authority, which we discuss below, we find those arguments unpersuasive and do not discuss them further.

## B. Challenge to the Justices' Jurisdiction

■ [¶ 15] "Jurisdiction is the essential basis of the court's authority, and this issue may be raised at any time." *Francis v. Dana–Cummings,* 2004 ME 4, ¶ 16, 840 A.2d 708. Accordingly, we address Going's contention that, without "commissions" that are "signed by the Governor, attested by the Secretary or a deputy of the Secretary and have the seal of the State thereto affixed," Me. Const. art. IX, § 3, the justices who acted in his case did so without authority or jurisdiction over the claims.

[¶ 16] The Maine Constitution requires state officers who are elected, appointed, or commissioned to take and subscribe oaths of office:

> **Oaths and subscriptions.** Every person elected or appointed to either of the places or offices provided in this Constitution, and every person elected, *appointed,* or *commissioned* to any judicial, executive, military or other office under this State, shall, before entering on the discharge of the duties of that place or office, take and subscribe the following oath or affirmation: "I, \_\_\_\_

do swear, that I will support the Constitution of the United States and of this State, so long as I shall continue a citizen thereof. So help me God."

"I \_\_\_ do swear, that I will faithfully discharge, to the best of my abilities, the duties incumbent on me as \_\_\_ according to the Constitution and laws of the State. So help me God."

Me. Const. art. IX, § 1 (emphasis added). This constitutional provision distinguishes between elections, appointments, and commissions by referring to those actions in the disjunctive: "every person elected, appointed, *or* commissioned to any judicial, executive, military or other office." *Id.* (emphasis added).

[¶ 17] The constitution specifies formalities for the issuance of "commissions" for those officers who must be commissioned to serve in State government. *See* Me. Const. art. IX, § 3; *see, e.g.,* Me. Const. art. VII, § 1 (requiring that "[a]ll commissioned officers of the militia ... be appointed *and commissioned by* the Governor" (emphasis added)).[4] In contrast, individuals who become jurists on the Maine Supreme Judicial Court, the Maine Superior Court, and the Maine District Court are appointed but not commissioned. *See* Me. Const. art. V, pt. 1, § 8.[5] Specifically, the Maine Constitution provides, "The Governor shall nominate, and, subject to confirmation as provided herein, *appoint* all judicial officers, except judges

---

4. Specifically, the constitution provides, "All *commissions* shall be in the name of the State, signed by the Governor, attested by the Secretary or a deputy of the Secretary and have the seal of the State thereto affixed." Me. Const. art. IX, § 3 (emphasis added).

5. The language of the Maine Constitution stands in contrast to the language of the United States Constitution. *See* U.S. Const. art. II, § 3. Regarding *federal* judges and justices, the United States Constitution provides that the President of the United States "shall *Com-*

*mission* all the Officers of the United States." *Id.* (emphasis added); *see also* 5 U.S.C.A. § 2902(c) (West, Westlaw through P.L. 113–93 (excluding P.L. 113–79) approved 4–1–14) (requiring that "[t]he commissions of judicial officers ... appointed by the President, by and with the advice and consent of the Senate ... be made out and recorded in the Department of Justice under the seal of that department and countersigned by the Attorney General").

of probate and justices of the peace if their manner of selection is otherwise provided for by this Constitution or by law .... "[6] *Id.* (emphasis added); *see also* Me. Const. art. VI, § 4 ("All judicial officers *appointed* by the Governor shall hold their offices for the term of 7 years from the time of their respective *appointments* ...." (emphasis added)).

[¶ 18] For an individual to be finally appointed to serve as a Maine state court judge or justice, the following official actions are constitutionally required: (1) nomination by the Governor, *see* Me. Const. art. V, pt. 1, § 8; (2) either of the following: (a) recommendation for confirmation by a majority of the present and voting members of "an appropriate legislative committee comprised of members of both houses in reasonable proportion to their membership as provided by law," *id.*, and review of that committee's recommendation by the Maine Senate, with the committee's recommendation becoming the final action of confirmation "unless the Senate by vote of 2/3 of those members present and voting overrides the committee recommendation," *id.*, or (b) a recommendation by the majority of the present and voting members of the legislative committee to deny appointment and a 2/3 vote of the present and voting members of the Senate to override that recommendation, *id.*, and (3) the confirmed nominee's taking and subscription of the oaths of office, *see* Me. Const. art. IX, § 1.

■ [¶ 19] Thus, the constitutional provision governing the issuance of "commissions," article IX, section 3, does not apply to the appointment of Maine state court jurists. Rather, when an individual takes the oaths of office to become a state court judge or justice, a document is executed that includes the signed oaths of the appointed jurist and the signature of the Governor certifying that the justice was appointed, appeared before the Governor, and took and subscribed the oaths required by the Maine Constitution to qualify to discharge the duties of a judge or justice of a specified court. *See* Me. Const. art. IX, § 1; 5 M.R.S. § 5 (2013). Each such document is kept on file by the Secretary of State. *See* Me. Const. art. V, pt. 2, § 4 ("The Secretary of State shall carefully keep and preserve the records of all the official acts and proceedings of the Governor, Senate and House of Representatives ...." ).[7]

[¶ 20] Because state court judges and justices, whether serving on the Supreme Judicial Court, the Superior Court, or the District Court, are not "commissioned" and do not receive "commissions," Going has failed to demonstrate any lack of jurisdiction in any of the jurists who acted in his case. Discerning no error, we affirm the judgment.

The entry is:

Judgment affirmed.

---

6. Unlike state court judges, county judges of probate are elected to their offices, *see* Me. Const. art. VI, § 6, and attorneys who serve as justices of the peace are authorized to do so by the Chief Judge of the District Court, *see* 4 M.R.S. § 161 (2013).

7. In addition, the jurist receives a ceremonial certificate bearing the signatures of the jurist and the Governor to commemorate the jurist's taking and subscription of the oaths of office.