MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:      2015 ME 76
Docket:        And-14-368
Argued:        December 10, 2014
Decided:       June 18 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## GUARDIANSHIP OF SEBASTIEN CHAMBERLAIN et al.

SAUFLEY, C.J.

[¶1]  In this matter of first impression, we are called upon to address the constitutionality of the process that the Legislature has provided for a Probate Court to establish a guardianship for a child who has been in the care of a "de facto guardian" for an identified period of time without a parent's consistent participation in the child's life.  *See* 18-A M.R.S. § 5-204(d) (2014).  Marc Chamberlain, the father of two children who have been in the care of their maternal grandmother for a number of years before and following the death of their mother, presents this facial challenge to the constitutionality of a provision of the Probate Code governing the appointment of guardians for minors, 18-A M.R.S. § 5-204(d).

[¶2]  After a trial, the Androscoggin County Probate Court (*Dubois, J.*) determined, pursuant to 18-A M.R.S. § 5-204(c) (2014), that the grandmother had not proved by clear and convincing evidence—the statutorily designated standard of proof—that Chamberlain had created an "at least temporarily intolerable" living situation for the children.  *Id.*  The court did determine, however, applying the

lower statutory standard of proof by a preponderance of the evidence, that the grandmother had met her burden pursuant to 18-A M.R.S. § 5-204(d)—the de facto guardian provision. Because we conclude that the appointment of a guardian over a parent's objection upon proof by the lower standard of a preponderance of the evidence violates the Due Process Clause of the United States Constitution, *see* U.S. Const. amend. XIV, § 1, we vacate the judgment and remand the matter for the court to apply the constitutionally required standard of proof by clear and convincing evidence when applying section 5-204(d).

## I. BACKGROUND

[¶3] The parties agree that Chamberlain has been living apart from the children since 2007. On January 14, 2014, following the December 2013 death of the children's mother, their maternal grandmother, with whom they had been living for several years, and their maternal aunt petitioned the Androscoggin County Probate Court for appointment as the children's co-guardians. The court appointed the grandmother and aunt as temporary co-guardians of the children the next day. The court held a hearing on June 24, June 25, and July 14, 2014, at which Chamberlain opposed the grandmother and aunt's petition. The court entered a judgment appointing the grandmother—but not the aunt—as guardian of the two children.

[¶4]  The court analyzed the evidence under two of the four statutory alternatives authorizing the appointment of a guardian of a minor.  18-A M.R.S. § 5-204(c), (d).  The court first determined that neither the grandmother nor the aunt had met the burden pursuant to 18-A M.R.S. § 5-204(c) to prove by clear and convincing evidence that a living situation had been created that was at least temporarily intolerable for the children.  The court then turned to the second alternative and applied the plain language of 18-A M.R.S. § 5-204(d), which authorizes the appointment of a guardian without a parent's consent if "the court finds by a preponderance of the evidence that there is a de facto guardian and a demonstrated lack of consistent participation by the nonconsenting parent or legal custodian of the unmarried minor," and that "the appointment is in the best interest of the child."  *Id.*; *see also* 18-A M.R.S. § 5-204(b) (2014).[1]  The court found by a preponderance of the evidence that the grandmother—but not the aunt—was a "de facto guardian" and that Chamberlain had not consistently participated in the children's lives.  The court entered a judgment appointing the grandmother as the children's guardian.

---

[1]  As it pertains to a child who is at least three years old, the term "de facto guardian" means "an individual with whom, within the 24 months immediately preceding the filing of a petition . . . a child has resided for [12 months or more, which need not be consecutive] and during which period there has been a demonstrated lack of consistent participation by the parent or legal custodian."  18-A M.R.S. § 5-101(1-B) (2014).  A shorter period of shared residence applies when the child is less than three years old.  *See* 18-A M.R.S. § 5-101(1-B)(a).

4

[¶5] Chamberlain moved for findings of fact and conclusions of law and for the court to reconsider its findings with respect to section 5-204(d) applying the higher standard of proof by clear and convincing evidence. *See* M.R. Prob. P. 52, 59; M.R. Civ. P. 52(a), (b), 59(e). In his motion to reconsider, Chamberlain argued that the Due Process Clause required the court to apply the higher standard of proof. The court made additional findings, but it denied Chamberlain's motion for reconsideration and did not address the standard of proof further.

[¶6] Chamberlain timely appealed. *See* 18-A M.R.S. § 1-308 (2014); M.R. App. P. 2. He did not request a transcript of the trial or obtain any substitute for a transcript, *see* M.R. App. P. 5, and opted instead to mount a facial challenge to the constitutionality of 18-A M.R.S. § 5-204(d).[2] We do not, therefore, summarize the factual findings of the trial court here.

## II. DISCUSSION

A.    Facial Constitutional Challenges

[¶7] Chamberlain argues that section 5-204(d) is facially unconstitutional because it, and the statutes defining its terms, are unconstitutionally vague and

---

2    We understand from the docket entries that the Probate Court ensured that other procedural safeguards were implemented: the parties had notice and an opportunity to be heard, *see Sparks v. Sparks*, 2013 ME 41, ¶ 28, 65 A.3d 1223, the matter was recorded, *see* Recording of Trial Court Proceedings, Me. Admin. Order JB-12-1 § II (as amended by A. 11-14) (effective Nov. 24, 2014), the parties had the opportunity to request the appointment of a guardian ad litem for the children, *see* 18-A M.R.S. § 1-112 (2014), and the parties had counsel for the contested proceedings, *see* 18-A M.R.S. § 5-204 (2014).

violate due process. With respect to due process, Chamberlain argues that the statutes violate parents' rights to substantive and procedural due process. Regarding each of his arguments, Chamberlain contends that section 5-204(d) is unconstitutional on its face.[3]

[¶8] When we address a facial constitutional challenge, the laws enacted by the elected representatives of the people of Maine are entitled to the deference of the courts. "The court is bound to assume that, in the passage of any law, the Legislature acted with full knowledge of all constitutional restrictions and intelligently, honestly and discriminatingly decided that they were acting within their constitutional limits and powers." *Laughlin v. City of Portland*, 111 Me. 486, 489, 90 A. 318 (1914). That deference is further expressed in the presumption of constitutionality that we accord Maine statutes. *See Doe v. Anderson*, 2015 ME 3, ¶ 11, 108 A.3d 378.

[¶9] Consistent with that presumption, facial challenges to the constitutionality of statutory provisions are not undertaken lightly. As the Supreme Court of the United States has stated, "facial challenges threaten to short

---

[3] Although in the absence of a transcript of the proceedings, we ordinarily assume that the transcript would support all factual findings, *see Laprel v. Going*, 2014 ME 84, ¶ 2, 96 A.3d 67, without a complete record, we will not address an argument that a statute is unconstitutional as applied, *see McGee v. Sec'y of State*, 2006 ME 50, ¶ 18, 896 A.2d 933 (stating, when the factual record was inadequate for us to consider a constitutional challenge to a statute as applied, that we would review only whether the statute was facially unconstitutional).

circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008). "'A ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329 (2006) (alteration omitted) (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) (plurality opinion)).[4]

[¶10] Because of the weighty concerns that caution courts against making overly broad declarations of constitutional invalidity, a party mounting a facial challenge must demonstrate that "no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see Wash. State Grange*, 552 U.S. at 449 (stating that a statute will be deemed facially invalid only if "the law is unconstitutional in all of its applications"); *Conlogue v.*

---

[4] The Supreme Court of the United States has recognized additional reasons that facial challenges are disfavored:

> Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of "premature interpretation of statutes on the basis of factually barebones records." *Sabri v. United States*, 541 U.S. 600, 609, 124 S. Ct. 1941, 158 L. Ed. 2d 891 (2004) (internal quotation marks and brackets omitted). Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither "'anticipate a question of constitutional law in advance of the necessity of deciding it'" nor "'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Ashwander v. TVA*, 297 U.S. 288, 346-347, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring) (quoting *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration*, 113 U.S. 33, 39, 5 S. Ct. 352, 28 L. Ed. 899 (1885)).

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008).

*Conlogue*, 2006 ME 12, ¶ 5, 890 A.2d 691 (applying the *Salerno* test). Thus, a facial challenge will be considered only if there is a reasoned argument that a challenged statute cannot be applied constitutionally on any set of facts.[5] Applying this standard, we consider whether Chamberlain can possibly prevail in his arguments raising issues of (1) unconstitutional vagueness, (2) substantive due process, and (3) procedural due process.

1. Vagueness

[¶11] Because of the standard applied to facial challenges, Chamberlain cannot prevail in his argument that the statutes are facially void for unconstitutional vagueness. Chamberlain challenges the definition of a "demonstrated lack of consistent participation," 18-A M.R.S. § 5-101(1-C) (2014), as being unconstitutionally vague. "A statute may be void for vagueness when people of common intelligence must guess at its meaning." *State v. Peck*, 2014 ME 74, ¶ 10, 93 A.3d 256 (quotation marks omitted). "In examining the

---

[5] Although in *Washington State Grange*, the Supreme Court of the United States listed reasons why facial challenges to statutes' constitutionality are disfavored, 552 U.S. at 450-51, it has since declared statutes facially unconstitutional. *See, e.g.*, *Shelby Cnty., Ala. v. Holder*, 133 S. Ct. 2612, 2631 (2013); *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2733, 2742 (2011); *United States v. Stevens*, 559 U.S. 460, 467, 482 (2010). Other federal and state courts have also declared statutes facially unconstitutional—whether pursuant to the federal constitution or a state constitution—in varied circumstances since the *Washington State Grange* decision. *See, e.g.*, *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 832 (7th Cir. 2014); *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 308 (4th Cir. 2008); *MKB Mgmt. Corp. v. Burdick*, 16 F. Supp. 3d 1059, 1074-75 (D.N.D. 2014); *Martin v. Kohls*, 444 S.W.3d 844, 846 (Ark. 2014); *Montenegro v. N.H. Div. of Motor Vehicles*, 93 A.3d 290, 298 (N.H. 2014); *State ex rel. Sunset Estate Props., LLC v. Vill. of Lodi*, No. 2013-1856, 2015 Ohio LEXIS 480, at *1, 8-9 (Ohio Mar. 10, 2015); *cf. State v. Crute*, 860 N.W.2d 284, 292-99 (Wis. Ct. App. 2015).

8

sufficiency of statutory language, [o]bjective quantification, mathematical certainty, and absolute precision are not required." *Id*. (alteration in original) (quotation marks omitted).

[¶12]  Section 5-101(1-C) defines the term "demonstrated lack of consistent participation," which is used in section 5-204(d), as

> refusal or failure to comply with the duties imposed upon a parent by the parent-child relationship, including but not limited to providing the child necessary food, clothing, shelter, health care, education, a nurturing and consistent relationship and other care and control necessary for the child's physical, mental and emotional health and development.

18-A M.R.S. § 5-101(1-C).[6]  To determine whether a parent demonstrated a lack of consistent participation, the court must consider the following factors, at a minimum:

> **(a)** The intent of the parent, parents or legal custodian in placing the child with the person petitioning as a de facto guardian;
>
> **(b)** The amount of involvement the parent, parents or legal custodian had with the child during the parent's, parents' or legal custodian's absence;
>
> **(c)** The facts and circumstances of the parent's, parents' or legal custodian's absence;
>
> **(d)** The parent's, parents' or legal custodian's refusal to comply with conditions for retaining custody set forth in any previous court orders; and

---

6  "Serving as a member of the United States Armed Forces may not be considered demonstration of lack of consistent participation."  18-A M.R.S. § 5-101(1-C) (2014).

**(e)** Whether the nonconsenting parent, parents or legal custodian was previously prevented from participating in the child's life as a result of domestic violence or child abuse or neglect.

*Id.*

[¶13]   Only if "no set of circumstances exists under which the [statute] would be valid," *Salerno*, 481 U.S. at 745, will we declare a legislative enactment unconstitutional. *See also Conlogue*, 2006 ME 12, ¶ 5, 890 A.2d 691. As applied in at least some situations, the statutes provide adequate guidance for decision-making. These statutes define the relevant terms with sufficient detail to avoid facial infirmity based on unconstitutional vagueness.

2.    Substantive Due Process

[¶14]  Nor will we vacate the judgment on the basis of Chamberlain's facial challenges raising issues of substantive due process. He contends that a judicial finding of unfitness is necessary for section 5-204(d) to satisfy substantive due process, citing to *In re Guardianship of Jewel M.* (*Jewel II*), 2010 ME 80, ¶¶ 7, 11, 2 A.3d 301 (construing section 5-204(c) to require a finding of unfitness given a parent's fundamental liberty interest in the care or custody of the child).[7] Even if Chamberlain is correct that a finding of unfitness is necessary, the facts

---

[7]   We held that for a court to appoint a guardian pursuant to section 5-204(c), the court must find, among other things, that "the parent is unfit in that he is currently unable to meet the child's needs and that inability will have an effect on the child's well-being that may be dramatic, and even traumatic, if the child lives with the parent." *In re Guardianship of Jewel M.* (*Jewel II*), 2010 ME 80, ¶ 11, 2 A.3d 301.

demonstrating a "lack of consistent participation" may also demonstrate parental unfitness in some instances. *See* 18-A M.R.S. §§ 5-101(1-C), 5-204(d); *Jewel II*, 2010 ME 80, ¶ 11, 2 A.3d 301; *cf.* 22 M.R.S. § 4055(1)(B)(2)(b) (2014) (defining unfitness for purposes of termination of parental rights). Because the constitutional standard that Chamberlain endorses could be satisfied through some applications of section 5-204(d), we will not conclude, for purposes of this issue, that "the law is unconstitutional in all of its applications." *Wash. State Grange*, 552 U.S. at 449-51 (disfavoring facial challenges in part because decisions may be premature or improperly rest on speculation).

[¶15] We similarly reject Chamberlain's argument that the applicable statutes violate principles of substantive due process because they do not require proof that the child resided with the de facto guardian in the absence of a parent for the requisite period of time. Even if we were to agree that the absence of a parent from the de facto guardian's residence was constitutionally required, there would be some circumstances in which the statute could be applied constitutionally because the child did reside with a de facto guardian without a parent present. *See Salerno*, 481 U.S. at 745; *Conlogue*, 2006 ME 12, ¶ 5, 890 A.2d 691. Accordingly, we decline to declare section 5-204(d) facially unconstitutional on the basis of substantive due process.

### 3. Procedural Due Process

[¶16] Finally, Chamberlain argues that the standard of proof provided in section 5-204(d) is unconstitutional on its face because the standard is inadequate to satisfy the requirements of procedural due process. The Legislature has recognized the critical importance of a parent's rights by adopting a standard of proof by clear and convincing evidence when the putative guardian alleges that the parent who opposes the appointment of a guardian has created an "at least temporarily intolerable" living situation for the child. 18-A M.R.S. § 5-204(c). Juxtaposed against that provision is the similar provision at issue here, which allows the creation of a guardianship over a parent's objection when the putative guardian has alleged that she has cared for the child for a defined period of time without consistent participation by the parent. 18-A M.R.S. §§ 5-101(1-B), (1-C), 5-204(d) (2014). Although the extent of the intrusion into parental rights is identical, and the State's compelling interest in the safety and well-being of children is similar, the statutes specify different standards of proof. In this context, we will consider the substance of Chamberlain's facial challenge, based on principles of procedural due process, to the standard of proof set forth in section 5-204(d).

B.      Adequacy of Standard of Proof to Ensure Procedural Due Process

[¶17]   Chamberlain argues that a court must reach its findings by clear and convincing evidence for its decision pursuant to section 5-204(d) to satisfy constitutional requirements of procedural due process.    The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "Procedural due process rules are meant to protect persons not from the deprivation, but from the *mistaken or unjustified* deprivation of life, liberty, or property."  *Carey v. Piphus*, 435 U.S. 247, 259 (1978) (emphasis added).   Applying procedural due process principles, we examine section 5-204(d) in light of three distinct factors: "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure."  *Santosky v. Kramer*, 455 U.S. 745, 754 (1982) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[¶18]   We begin by considering the private and governmental interests at stake—the first and third *Mathews* factors.  424 U.S. at 335.  The private liberty interest at issue is that "of parents in the care, custody, and control of their children," which "is perhaps the oldest of the fundamental liberty interests recognized" by the Supreme Court of the United States.  *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion) (quotation marks omitted).  More than ninety

years ago, the Supreme Court of the United States first recognized that the liberties protected by the Due Process Clause include the liberty of a parent to "establish a home and bring up children." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *see* U.S. Const. amend. XIV, § 1. Like the Supreme Court of the United States, we have acknowledged the fundamental liberty interest of parents in "the care, custody, and control of their children." *Jewel II*, 2010 ME 80, ¶ 6, 2 A.3d 301; *Rideout v. Riendeau*, 2000 ME 198, ¶ 18, 761 A.2d 291.

[¶19] The governmental interest at issue—the State's interest in "preserving and promoting the welfare of the child"—is an urgent governmental interest. *Santosky*, 455 U.S. at 766. Here, that interest is expressed in the provisions of section 5-204(d), which require, before a guardianship can be created, the consideration of the parent's and potential guardian's participation in the child's life, the length of time that a child has been cared for by alternate caregivers, the child's residence, and the best interest of the child. *See* 18-A M.R.S. §§ 5-101(1-B), (1-C), 5-204(d).

[¶20] We now consider the standard of proof as it relates to the second *Mathews* factor—the risk of error created by the statute at issue. 424 U.S. at 335. Because of the importance of a parent's liberty interest in the care, custody, and control of a child, the standard of proof applied by a court before it interferes with a parent's exercise of parental rights has constitutional significance. *See Jewel II*,

2010 ME 80, ¶ 6, 2 A.3d 301. The purpose of the assigned standard of proof is "to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Taylor v. Comm'r of Mental Health & Mental Retardation*, 481 A.2d 139, 150 (Me. 1984) (quotation marks omitted). A greater degree of certainty is required when more serious consequences flow from a decision, and therefore a higher standard of proof is imposed. *See id*. at 150-52.

[¶21] The standard of proof by clear and convincing evidence is an intermediate standard of proof that is "mandated . . . when the individual interests at stake in a state proceeding are both particularly important and more substantial than mere loss of money." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 282 (1990) (quotation marks omitted). Facts are established by clear and convincing evidence when the proof offered "create[s] in the fact-finder an abiding conviction that it is highly probable that facts sought to be proved are the correct view of the events." *Jewel II*, 2010 ME 80, ¶ 12, 2 A.3d 301 (quotation marks omitted).

[¶22] The standard of proof by a preponderance of the evidence is a lower standard; it requires only proof that it is "more likely than not" that the facts as established are true. *In re Dakota P.*, 2005 ME 2, ¶ 15, 863 A.2d 280 (quotation marks omitted). "[T]he preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants" and therefore is the

standard "applicable in civil actions between private litigants *unless particularly important individual interests or rights are at stake.*" *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (emphasis added) (quotation marks omitted).

[¶23]   In addressing the important individual interests at stake, judicial decisions that affect parental rights fall on a continuum based on the nature and extent of the interests and rights affected, and the degree of finality of the different types of decisions.   At one end of the continuum are proceedings to terminate a person's parental rights.   The Supreme Court of the United States has held that requiring proof by clear and convincing evidence in those proceedings satisfies the Constitution because, in the balance of interests, it "adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process." *Santosky*, 455 U.S. at 769; *see In re H.C.*, 2013 ME 97, ¶ 11, 82 A.3d 80.   The requirement of clear and convincing evidence is based primarily on concerns arising from the finality of the decision to terminate parental rights. *In re Christmas C.*, 1998 ME 258, ¶ 12, 721 A.2d 629 (citing *Santosky*, 455 U.S. at 758-59, and *In re Guardianship of Hughes*, 1998 ME 186, ¶ 13, 715 A.2d 919).   The Maine Legislature appropriately adopted the clear and convincing evidence standard in the statute governing the termination of parental rights. *See* 22 M.R.S. § 4055(1)(B)(2) (2014).

[¶24]  The heightened standard of proof by clear and convincing evidence is also required when a court is making a final determination about whether a person is a child's de facto parent with the consequent permanent role in the child's life. *See Pitts v. Moore*, 2014 ME 59, ¶¶ 27, 36-37, 90 A.3d 1169.  De facto parenthood determinations, unlike determinations of guardianship, do not necessarily involve any finding of deficiencies on the part of *other* parents, but the degree of finality in establishing a permanent relationship between the child and a person other than a previously legally recognized parent, and the resulting intrusion into existing parental relationships, makes a standard of proof by clear and convincing evidence constitutionally necessary in such cases.  *See id.* ¶¶ 34-38.

[¶25]  With respect to guardianship determinations, the Maine Legislature has established that proof by clear and convincing evidence may be required by incorporating that standard into another subsection of the statute governing the appointment of guardians for minor children.  Section 5-204(c) authorizes the appointment of a guardian without a parent's consent when

> the court finds by clear and convincing evidence that the person or persons [who have parental rights to the child] have failed to respond to proper notice or a living situation has been created that is at least temporarily intolerable for the child even though the living situation does not rise to the level of jeopardy required for the final termination of parental rights, and that the proposed guardian will provide a living situation that is in the best interest of the child.

18-A M.R.S. § 5-204(c). The requirement of proof by clear and convincing evidence contained in section 5-204(c), combined with a required showing of parental unfitness, as we explained in *Jewel II*, adequately protects a parent's fundamental liberty interest in the upbringing of his or her child. *See Jewel II*, 2010 ME 80, ¶¶ 7, 11-12, 2 A.3d 301; *see also In re Guardianship of Jewel M. (Jewel I)*, 2010 ME 17, ¶¶ 12-13, 989 A.2d 726.

[¶26] At the other end of the continuum, the lower standard of proof by a preponderance of the evidence is applied. This standard is properly applied when the court is balancing the rights of two individuals who have equal rights in parenting, as in divorce proceedings and parental rights and responsibilities cases between fit parents. *See Jacobs v. Jacobs*, 507 A.2d 596, 599 (Me. 1986); *see also Pitts*, 2014 ME 59, ¶ 37, 90 A.3d 1169. The standard is also adequate for due process purposes when a court enters a nonpermanent interim order, such as a jeopardy order, in a child protection proceeding where the State has interceded in the family to protect the child but no final judgment terminating parental rights is under consideration. *See In re Christmas C.*, 1998 ME 258, ¶ 13, 721 A.2d 629; *see also* 22 M.R.S. § 4035(2) (2014). Increasing the potential that the intrusion into the parent-child relationship is only temporary in such cases is the provision of rehabilitation and reunification services to the parents and child. 22 M.R.S. § 4041(1-A) (2014) (requiring the provision of services unless an aggravating

factor exists or efforts would be inconsistent with the permanency plan for the child).

[¶27] The guardianship provision before us today—the appointment of a guardian pursuant to 18-A M.R.S. § 5-204(d)—provides a greater degree of finality than a jeopardy order in a child protection case but less finality than an order terminating parental rights. As with a guardianship created pursuant to section 5-204(c), a guardianship established pursuant to section 5-204(d) will cease only upon the termination of the guardianship through the resignation or removal of the guardian in the Probate Court; the death of the guardian or the minor; or the minor's adoption, marriage, or attainment of majority. *See* 18-A M.R.S. §§ 5-210, 5-212 (2014). Moreover, in contrast to the consequences of a jeopardy order, neither the appointed guardian nor the State is obligated to provide services or make efforts to reunify the parent and child to prevent a permanent deprivation of the right to parent. *Compare* 18-A M.R.S. § 5-204, *with* 22 M.R.S. § 4041 (2014).

[¶28] The process for a parent to re-enter the child's life through a contested motion to terminate the guardianship also demonstrates the significant potential for a permanent interference with a parent's fundamental rights. The burdens on the parties when the parent seeks to have the guardianship terminated are mixed. When a parent seeks the removal of a guardian who was appointed pursuant to section 5-204(c), the statute requires the guardian to prove by a preponderance of

the evidence that the parent remains unfit. *See In re Guardianship of Stevens*, 2014 ME 25, ¶¶ 13-14, 86 A.3d 1197 (construing 18-A M.R.S. §§ 5-204(c) and 5-212(d) to place the burden on the party opposing the termination of the guardianship to establish continued parental unfitness). As to the best interest of the child, however, the burden is on the parent rather than the guardian when the parent petitions for removal of the guardian and termination of the guardianship. *See* 18-A M.R.S. § 5-212(d) ("The petitioner has the burden of showing by a preponderance of the evidence that termination of the guardianship is in the best interest of the ward."); *In re Guardianship of Stevens*, 2014 ME 25, ¶ 14, 86 A.3d 1197. Thus, once a guardianship is established, there is, by statute, "a presumption in favor of continuing it." *In re Guardianship of Jeremiah T.*, 2009 ME 74, ¶ 21, 976 A.2d 955.

[¶29] In addition to considerations of the finality of the guardianship, it is important to recognize the extent of the powers granted to a guardian. A guardian, once appointed, has almost all decision-making responsibilities for the child, which removes from the parent even the right to determine how or where the child should be raised. *See* 18-A M.R.S. § 5-209 (2014) ("A guardian of a minor has the powers and responsibilities of a parent . . . except that a guardian is not legally obligated to provide from the guardian's own funds for the ward and is not liable to 3rd persons by reason of the parental relationship for acts of the ward.").

[¶30]  Thus, although the appointment of a guardian pursuant to section 5-204(d) does not result in the same degree of finality as a termination of parental rights or a determination of de facto parenthood, the appointment is more final than a jeopardy order in a child protection proceeding, and parental rights are transferred to the guardian almost in their entirety.  Pursuant to the current language of section 5-204(d), these results may occur even if the elements of the statute are established by a preponderance of the evidence—the lower standard of proof.  This stands in marked contrast to the standard of proof that the Legislature provided in the very similar proceedings provided for in section 5-204(c).

[¶31]  When the government authorizes an extensive and potentially permanent intrusion into fundamental constitutional rights, the risk of erroneous deprivation of a parent's rights is high if the decision-maker does not have a greater-than-ordinary degree of confidence in the correctness of its factual findings—namely, the degree of confidence afforded by the standard of proof by clear and convincing evidence.  *See Mathews*, 424 U.S. at 344; *Pitts*, 2014 ME 59, ¶ 27, 90 A.3d 1169; *Taylor*, 481 A.2d at 150.  The Legislature recognized the importance of the standard of proof when it required proof by clear and convincing evidence in section 5-204(c).  We similarly recognized the importance of the standard of proof when we required that de facto parenthood be established by clear and convincing evidence in *Pitts v. Moore*, 2014 ME 59, ¶ 27, 90 A.3d 1169.

[¶32]   Ultimately, in balancing the *Mathews* factors in this matter, we conclude that the appointment of a guardian pursuant to section 5-204(d) is most akin to an appointment of a guardian pursuant to section 5-204(c), and is more similar to a termination of parental rights or a determination of de facto parenthood than it is to a divorce or parental rights and responsibilities judgment entered with respect to fit parents, or to an initial determination of jeopardy or other interim child protection order.

[¶33]   Therefore, in every instance, a court's application of the statutorily provided standard of proof by a preponderance of the evidence would be constitutionally deficient.  *See Conlogue*, 2006 ME 12, ¶ 5, 890 A.2d 691.  To properly balance the constitutional rights at issue, an order appointing a guardian pursuant to section 5-204(d)—like other orders that terminate or severely constrain the fundamental right to parent—can be entered only after a court has made findings applying the standard of proof by clear and convincing evidence.

[¶34]   In this rare circumstance in which the statute under review fails to afford a constitutionally required procedural safeguard, we hold that section 5-204(d) is facially unconstitutional to the extent that it provides for a standard of proof by a preponderance of the evidence.  The only interpretation that can render section 5-204(d) constitutional is to require proof by clear and convincing evidence instead of proof by a preponderance of the evidence as stated in the statute.  *See*

*Ayotte*, 546 U.S. at 328-29 (stating preferences "to sever [a statute's] problematic portions while leaving the remainder intact" and "not to nullify more of a legislature's work than is necessary"). Notwithstanding the plain language of section 5-204(d), the applicable standard of proof must be proof by clear and convincing evidence.

## III. CONCLUSION

[¶35]   Because we conclude that section 5-204(d) provides for the application of a standard of proof that is not adequate to protect parents' rights of procedural due process, and that the statute may be made to comply with constitutional requirements by applying the clear and convincing standard of proof, we vacate the Probate Court's judgment and remand the matter for the court to apply the standard of proof by clear and convincing evidence.[8]   Due to the passage of time, we defer to the discretion of the court in determining whether the court should reopen the record for updated evidence, or should apply the constitutional standard to the evidence already of record.

The entry is:

> Judgment vacated.  Remanded for the court to apply the standard of proof by clear and convincing evidence.

---

[8] Although the facts as stated in the court's judgment may appear compelling, we cannot determine whether the court would have made the same factual findings if it had applied the standard of proof by clear and convincing evidence.

**On the briefs and at oral argument:**

E. Chris L'Hommedieu, Esq., Lewiston, for appellant Marc Chamberlain

Aubrey A. Russell, Esq., Lewiston, for appellee grandmother

Androscoggin County Probate Court docket numbers 2014-12 and 2014-13
FOR CLERK REFERENCE ONLY