MAINE SUPREME JUDICIAL COURT                                  Reporter of Decisions
Decision:     2017 ME 187
Docket:       Ken-17-59
Argued:       June 15, 2017
Decided:      August 29, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE EMMA B.

HJELM, J.

[¶1]  In this child protection action, the father of Emma B. appeals from a judgment entered in the District Court (Waterville, *Mathews, J.*) finding that the child is in circumstances of jeopardy, *see* 22 M.R.S. §§ 4035, 4036 (2016), and ordering that the child be placed in the custody of the Department of Health and Human Services and that the Department cease reunification efforts with him.  On appeal, the father does not challenge the jeopardy order on its merits but rather argues that the court erred by denying his motion to dismiss the child protection petition as to him for lack of personal jurisdiction.  We conclude that, to have the authority to issue a jeopardy order that will protect the child, the court was not required to have personal jurisdiction over the father, and we therefore affirm.

## I. BACKGROUND

[¶2]  The following facts found by the court are supported by competent evidence in the record.  *See In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199.  The father lived with the child and mother until the child was approximately six months old, which would have been in early 2008.  The parties do not dispute that when the father lived with the mother and the child, they did not reside in Maine.[1]  From the time the father no longer lived with the mother and the child until approximately August 2016, he maintained regular contact with the child by means of telephone calls, video chats, social media, and in-person visits once or twice a year.  As the mother testified, the child continued to reside primarily with her in New York.

---

[1]  The father's motion to dismiss for "lack of personal jurisdiction" was not accompanied by an affidavit, despite our previous statements outlining such a procedure when a motion is filed before trial.  *See Bickford v. Onslow Mem'l Hosp. Found., Inc.*, 2004 ME 111, ¶ 9 n.2, 855 A.2d 1150; *Dorf v. Complastik Corp.*, 1999 ME 133, ¶¶ 12-15, 735 A.2d 984 (stating that submission of affidavits is a "useful" way to create a record for the court to determine whether it has in personam jurisdiction over a defendant).  Rather, the father simply asserted in his motion that he is a Massachusetts resident and has never been to Maine.  The Department, however, did not challenge the manner by which the father presented information to the court.  Further, because the Department has argued that the court has jurisdiction over the father, it bears the initial burden of demonstrating that such jurisdiction exists.  *See Commerce Bank & Tr. Co. v. Dworman*, 2004 ME 142, ¶ 8, 861 A.2d 662. Nevertheless, the Department has never challenged the father's factual assertions and in fact has based its arguments on those facts.  The court, in addressing the father's motion to dismiss, did not make explicit findings about the father's absence of any ties to Maine, even though the father subsequently moved for the court to issue such findings.  *See* M.R. Civ. P. 52.  It appears, however, that the court's decision to deny the father's motion to dismiss rested on its acceptance of the father's representations of fact.

[¶3]  The father is currently incarcerated in Massachusetts.  He has never acted as the child's primary caregiver, has not provided resources to the child, and did not intervene when the child's safety was at risk with the mother.  While incarcerated and after the Department commenced this child protection proceeding, the father was in contact with the mother by phone and inquired about the well-being of the child, but he has made no arrangements to provide care or otherwise take responsibility for the child.

[¶4]  In late July 2016, the mother relocated from New York to Maine, bringing the child with her, to escape an abusive ex-boyfriend.  The mother's current boyfriend moved to Maine with them.  The mother had notified the father that she and the child were moving, and the father did not oppose that decision.  In their home in Maine, the child was subjected to emotional abuse by her mother and was physically abused by the mother's boyfriend.

[¶5]  The Maine Department of Health and Human Services began an investigation into the child's circumstances after being notified by New York child protective authorities of an open case there and after a neighbor in Maine told police that the child had asked for help.  On August 5, 2016, Department and law enforcement officials placed the child in a six-hour hold, *see* 15 M.R.S. § 3501(1)-(2) (2016), due to the child's unsafe situation and the

4

mother's unwillingness to cooperate. The same day, the Department commenced this child protection proceeding,[2] *see* 22 M.R.S. § 4032 (2016), and obtained a preliminary child protection order, *see* 22 M.R.S. §§ 4034, 4036 (2016). The child was immediately placed with a foster family, but after both that and a second foster placement were unable to meet the child's needs, she was psychiatrically hospitalized for several weeks before being discharged to a therapeutic foster home.

[¶6] At the summary preliminary hearing held on August 22, 2016, *see* 22 M.R.S. § 4034(4), the father did not appear but the court (*E. Walker, J.*) determined that he had not been provided with sufficient notice. Subsequently, in November, the father was served with notice of the child protection proceeding at a correctional facility in Massachusetts. After the court (*Stanfill, J.*) appointed counsel to represent him, *see* 22 M.R.S. § 4005(2) (2016), the father filed a motion to dismiss the petition pursuant to M.R. Civ. P. 12(b)(2), asserting that the court lacked personal jurisdiction over him because he is not a Maine resident, has never traveled to Maine, and otherwise

---

[2] The Department of Health and Human Services also initiated a child protection proceeding involving another child of the mother, who has a different father and whom the mother also brought to Maine.

lacks sufficient minimum contacts with Maine. The court (*Mathews, J.*) denied the motion.

[¶7]  The father did not attend the jeopardy hearing, which was held on December 21, 2016. His attorney was present, however, and renewed the motion to dismiss for lack of personal jurisdiction. The court denied the motion, reasoning that "the nature of the child protection and the emergency and necessary need to address the child-related issues distinguishes this type of process" from divorce cases or child support proceedings. The court also concluded that the circumstances of this action, including the father's contacts with Maine, satisfied the standard three-part in personam jurisdiction analysis based on Maine's long-arm statute. *See infra* n.3.

[¶8]  At the hearing, the mother agreed to the issuance of a jeopardy order as to her, which included a requirement that the Department file a proposed reunification plan as to her. On January 19, 2017, the court issued a written jeopardy order as to the father. The court found that he "has never interceded on Emma's behalf. He has failed to protect her; failed to take responsibility for her and by failing to appear after being duly noticed to do so, he has abandoned her as contemplated" by 22 M.R.S. § 4002(1-A)(E) (2016). The court ordered that the child remain in the custody of the

6

Department. Because the jeopardy order against the father included an aggravated finding, namely, abandonment, the court ordered the Department to cease reunification efforts with him. *See* 22 M.R.S. § 4036(1)(G-2).

[¶9]  After the court denied the father's motion for further findings of fact and conclusions of law and to amend the judgment, *see* M.R. Civ. P. 52(b), 59(e), he filed a timely notice of appeal.

## II.  DISCUSSION

[¶10]  The father argues that the court lacked jurisdiction over him in this child protection proceeding because he has had no contact with Maine and because the residence of his child in the state is insufficient to establish personal jurisdiction over him.

[¶11]  The parties have framed their arguments primarily based on Maine's long-arm statute, 14 M.R.S. § 704-A (2016).[3] The nature of a jeopardy

---

[3]  In order to construe the in personam jurisdictional framework prescribed in Maine's long-arm statute in a way that fulfills the Legislature's express intention that jurisdiction over nonresident defendants should be as extensive as the United States Constitution allows, 14 M.R.S. § 704-A(1) (2016), we have held that the statute creates a three-part test. *Cavers v. Houston McLane Co.*, 2008 ME 164, ¶¶ 18-19, 958 A.2d 905; *Von Schack v. Von Schack*, 2006 ME 30, ¶ 9, 893 A.2d 1004. The plaintiff—i.e., the party asserting that the court has in personam jurisdiction—must demonstrate that (1) Maine has a legitimate interest in the subject matter of the litigation, and (2) the defendant, as a result of his conduct, reasonably could have anticipated litigation in Maine. *Cavers*, 2008 ME 164, ¶¶ 18-19, 958 A.2d 905. If the plaintiff establishes these elements, the defendant must then demonstrate that (3) the exercise of jurisdiction by Maine's courts does not comport with traditional notions of fair play and substantial justice. *Id.*

Here, the father acknowledges that Maine has a legitimate interest in the subject matter of this action, and he has not argued that the exercise of jurisdiction by Maine's courts would not

proceeding in a child protection case, however, does not implicate traditional notions of personal jurisdiction over a parent.

[¶12] In establishing the purposes of the Child and Family Services and Child Protection Act, the Legislature stated that "the health and safety of children must be of paramount concern," and recognized "that the right to family integrity is limited by the right of children to be protected from abuse and neglect." 22 M.R.S. § 4003 (2016). This principle invokes the State's well-established parens patriae interest in guarding the well-being of children. *See Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). In exercising its parens patriae responsibilities, a court "makes determinations for the child's welfare, focusing on what is best for the interest of the child and not on the needs or desires of the parents." *C.E.W. v. D.E.W.*, 2004 ME 43, ¶ 10, 845 A.2d 1146 (quotation marks omitted).

---

comport with traditional notions of fair play and substantial justice. This leaves only the disputed question of whether, through his conduct, the father could reasonably have anticipated litigation in Maine. "To reasonably anticipate litigation in a particular jurisdiction, one must purposefully avail oneself of the privilege of conducting activities within the jurisdiction and benefit from the protection of its laws." *Dworman*, 2004 ME 142, ¶ 16, 861 A.2d 662 (citation omitted). The record does not provide support for the Department's assertion and the court's finding that any conduct by the father met this criterion. Therefore, when gauged against the standard used to determine whether the Maine courts have in personam jurisdiction over the father, the conclusion on this record must be that no such jurisdiction exists. For the reasons set out in the text, however, the absence of in personam jurisdiction over the father pursuant to section 704-A did not preclude the court from issuing a jeopardy order as to him.

[¶13]  After a child protection petition is filed by the Department or others who have the statutory authority to do so, *see* 22 M.R.S. § 4032(1), the court is authorized to issue a jeopardy order following a hearing.  *See* 22 M.R.S. § 4035; *In re Christmas C.*, 1998 ME 258, ¶ 4, 721 A.2d 629.  The predicate of such an order is a finding that "the child is in circumstances of jeopardy to the child's health or welfare."  22 M.R.S. § 4035(2); *see also In re M.M.*, 2014 ME 15, ¶ 10, 86 A.3d 622 ("[R]egardless of the party bringing the petition, the focus of the District Court in a child protection case is to determine whether a child requires protection in the first instance, not to determine who should have custody." (quotation marks omitted)).  "Jeopardy" is defined as "serious abuse or neglect" resulting from circumstances such as "[s]erious harm or threat of serious harm"; deprivation of food, shelter or other necessities; deprivation of necessary health care that places the child in danger of serious harm; or abandonment that results in a threat of serious harm.  22 M.R.S. § 4002(6) (2016).

[¶14]  The purpose of the jeopardy order is to "provid[e] protection to that child."  *In re Christmas C.*, 1998 ME 258, ¶ 4, 721 A.2d 629.  The measures designed to protect the child from jeopardy may include, among other things, granting custody of the child to the Department if remaining in the home is

contrary to the welfare of the child; requiring the parents to engage in treatment that will ameliorate the circumstances of jeopardy; or, if the court finds that there is an aggravating factor described in 22 M.R.S. § 4002(1-B) (2016), such as abandonment, ordering the Department to cease efforts to reunify the parents or custodians with the child. 22 M.R.S. § 4036(1).

[¶15] None of the determinations that a court is called upon to make in a jeopardy proceeding requires the court to have personal jurisdiction over a parent. As a matter of venue, a child protection petition must be filed in the court located in the judicial district where the *child* resides or is otherwise present. 22 M.R.S. § 4031(2)(A) (2016). As for a parent, the child protection statutes direct only that he or she be served with a child protection petition filed by the Department, which was done here. *See* 22 M.R.S. § 4033(1)(A) (2016).

[¶16] The statutory requirement that the child live in or be present in Maine, without a corresponding requirement of personal jurisdiction over a parent, is reflective of the fact that issues specific to the court's jeopardy determination focus on the *child's* circumstances. *See In re Christmas C.*, 1998 ME 258, ¶ 4, 721 A.2d 629 (stating that "[i]f the court determines that a child is in circumstances of jeopardy," it may issue a jeopardy order). This

includes the question of whether the child is in circumstances of jeopardy in the first place, but it also reaches the nature of the disposition necessary to protect the child from jeopardy. Here, the court concluded that to protect the child, she needed to be removed from her home and placed in the Department's custody. Additionally, as to the father, the court issued a cease reunification order, which we have held "is an integral and essential part of the court's authority in child protection proceedings" and is one of the ways a court may "best protect the interests of the child." *Id*. ¶ 7.

[¶17] Therefore, to protect a child in Maine from circumstances of jeopardy, thereby fulfilling one of the judiciary's most fundamental and grave responsibilities, a court is vested with authority to issue a jeopardy order to protect a child, even when a parent of that child is himself beyond the court's jurisdictional reach.[4]

[¶18] Although not directly argued by the father, we remain fully cognizant of the constitutional protection afforded the relationship between a parent and child. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 65-66 (2000); *Rideout v. Riendeau*, 2000 ME 198, ¶ 18, 761 A.2d 291. Consequently, we have

---

[4] In light of our analysis, we do not reach the Department's argument that if the court does not have in personam jurisdiction regarding the father pursuant to the long-arm statute, *see infra* n.3, the court had authority to issue the jeopardy order as against him based on a status theory of jurisdiction. *See, e.g., In re R.W.*, 39 A.3d 682, 691 (Vt. 2011).

held, for example, that a cease reunification order implicates a parent's right to due process. *See In re Christmas C.*, 1998 ME 258, ¶ 11, 721 A.2d 629. The nature of that process, however, varies among different stages of a child protection proceeding. This is because due process is a function of the private interest affected, the risk of error inherent in the process, and the nature of the governmental interest at issue in the process being challenged. *See Santosky v. Kramer*, 455 U.S. 745, 754 (1982) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *Guardianship of Chamberlain*, 2015 ME 76, ¶ 17, 118 A.3d 229. These factors vary based on the stage of the child protective proceeding. We have described the shifting due process considerations generated by child protection proceedings in the following way:

> In a child protection proceeding, . . . the child not only has an interest in family integrity, an interest he shares with his parent, but the child has a substantial interest in protection from a jeopardous environment and it is the safety of the child which is at issue in such a proceeding. The child's interest in safety does not arise in a termination proceeding because, under our statutory structure, when such a proceeding commences, the child is not in a dangerous environment and an erroneous failure to terminate parental rights does not return the child to a dangerous environment; rather, the child remains with his present custodian. In contrast, the purpose of a child protection proceeding is to remove the child from or prevent him from returning to an environment jeopardous to his health or welfare.

*In re Sabrina M.*, 460 A.2d 1009, 1016 (Me. 1983) (citations omitted).

[¶19]  We have observed that judicial decisions affecting parenting rights "fall on a continuum based on the nature and extent of the interests and rights affected, and the degree of finality of the different types of decisions." *Guardianship of Chamberlain*, 2015 ME 76, ¶ 23, 118 A.3d 229.  A jeopardy order falls on the less-intrusive end of that continuum because it is "a nonpermanent interim order . . . where the State has interceded in the family to protect the child but no final judgment terminating parental rights is under consideration."  *Id.* ¶ 26.  Unlike a termination order, for example, which can "end" the parent's liberty interest because the order terminates the underlying parent-child relationship itself, jeopardy orders are "neither final nor irrevocable . . . [and] may be, and frequently are, modified." *In re Christmas C.*, 1998 ME 258, ¶ 12, 721 A.2d 629 (quotation marks omitted) (holding that a preponderance standard of proof is constitutionally adequate in a jeopardy proceeding, while a standard of clear and convincing evidence is required for the court to terminate parental rights).

[¶20]  Balanced against the parent's interest is "the State's interest in preserving and promoting the welfare of the child—[which] is *an urgent governmental interest*."  *Guardianship of Chamberlain*, 2015 ME 76, ¶ 19, 118 A.3d 229 (emphasis added) (quotation marks omitted).  The magnitude of

the State's interest is particularly acute in a jeopardy proceeding, where the immediate risk to the child's safety and welfare is at issue. Here, with support in the record, the court found that the child, who was present in Maine, had been subjected to emotional and physical abuse and had been exposed to domestic violence; the mother had neglected the child's needs; the child suffered from significant emotional and behavioral problems; the mother was reticent to engage in services; and the father had had limited contact with the child and was currently unavailable to her because he was incarcerated.

[¶21] In this matter, even though the court did not have personal jurisdiction over the father, he received process as required by 22 M.R.S. § 4033 (2016); he was given actual notice that the Department had commenced this child protection action, and he had an opportunity to be heard at the hearing—the hallmarks of due process. *See Int'l Union v. Bagwell*, 512 U.S. 821, 832-33 (1994); *Guardianship & Conservatorship of Jones*, 2017 ME 125, ¶ 19, ---A.3d--- ("The essence of due process is notice and an opportunity to be heard." (quotation marks omitted)). Further, the father was represented by counsel at the jeopardy hearing. Finally, the father remains free to become involved in this protection case affecting his child, by moving the court for judicial review of the jeopardy order, *see* 22 M.R.S. § 4038(2)

(2016); moving for a determination of the suitability of placing the child with him pursuant to the Interstate Compact for the Placement of Children, *see* 22 M.R.S. §§ 4251-69 (2016); or through some other form of participation.

[¶22] Because the court retained authority to issue an order to protect the child from jeopardy despite the absence of personal jurisdiction over the father, and because the process did not violate the father's liberty interests arising from his parental relationship with her, we affirm the jeopardy order.

The entry is:

Judgment affirmed.

---

Jared S. Brewer, Esq. (orally), Schneider & Brewer, Waterville, for appellant Father

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Waterville District Court docket number PC-2016-47
FOR CLERK REFERENCE ONLY