2001 ME 21

**Estate of Robert E. SWEETLAND.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 18, 2001.

Decided: Jan. 30, 2001.

James B. Smith, Esq., Woodman Edmands Danylik & Austin, P.A., Biddeford, for appellant.

Harold C. Pachios, Esq., Sigmund D. Schutz, Esq., Preti Flaherty Beliveau Pachios & Haley, LLC, Portland, for appellee.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS.

RUDMAN, J.

[¶ 1] Irene Mailhiot, personal representative of the Estate of Robert E. Sweetland, appeals from the judgment entered in the Cumberland County Probate Court (*Childs, J.*) ordering that she reimburse the Estate of Sweetland in the amount of $40,613.26. She contends that she should be compelled to reimburse the estate only for 10% of the court's surcharge. We disagree and, therefore, affirm the judgment of the Cumberland County Probate Court.

## I.  BACKGROUND

[¶ 2] Robert E. Sweetland of Windham, Maine, died testate on January 24, 1997. Pursuant to his Last Will and Testament, Irene Mailhiot of Hull, Massachusetts, was appointed to serve as the Personal Representative of Sweetland's Estate.

[¶ 3] Sweetland's will directed that his residuary estate be divided in the following manner: 40% to the Massachusetts Shriners Hospital Burn Institute; 20% to a Massachusetts Masonic Home; 5% to the American Cancer Society in Brunswick, Maine; 15% to the Salvation Army in Portland, Maine; 10% to the Maine State Society for the Protection of Animals (MSSPA), the Appellee herein; and 10% to the Animal Refuge League, in Westbrook, Maine.

[¶ 4] Sweetland's Estate was valued at $227,085.98 and consisted primarily of a home in Windham, Maine, a car, and numerous bank accounts. In July 1999, Mailhiot contacted all six beneficiaries and provided each with a First and Final Accounting, which included Schedule A (Assets and Income Earned) and Schedule B (Liabilities and Expenses Incurred for the period January 24, 1997, up through and including June 30, 1999). Mailhiot also provided each beneficiary with a "Receipt and Release" accompanied by a note stating that, "[u]pon my receipt, of all six (6) Receipt and Release agreements properly executed and notarized, I will forward you a check, payable to your organization, in the amount of your entitlement, ...."[1]

[¶ 5] MSSPA offered to execute a receipt but refused to sign a release. The Accounting and Inventory provided to MSSPA showed that Mailhiot had charged $94,889.85 in administration fees and expenses to the Estate, leaving $132,196.14 to be distributed to the beneficiaries. Of this $94,889.85, Mailhiot billed the Estate for $36,000 in administrative fees,[2] and $14,113.26 for travel related fees.

[¶ 6] Pursuant to 18–A M.R.S.A. § 3–1003, Mailhiot filed a Sworn Statement of Personal Representative Closing Estate. MSSPA, pursuant to 18–A M.R.S.A. §§ 3–719 and 3–721, objected to Mailhiot's closing statement and petitioned for a judicial review of the reasonableness of Mailhiot's administration fees and expenses. MSSPA alleged that Mailhiot's expenses

---

1. The "Receipt and Release" stated, in relevant part that,

   WHEREAS, in order to avoid the additional expense and delay of a judicial settlement of the account, the Personal Representative has agreed to the settlement of the estate by receipt and release;
   NOW THEREFORE, the undersigned, having examined all statements and accounts hereinbefore referred to of the Personal Representative, does hereby APPROVE, RATIFY AND CONFIRM the same in all respects.
   The undersigned further agrees that the said Personal Representative has settled its accounts, has paid all of the creditors and claimants of the estate, has made distribution of the estate, and has closed the administration of said estate upon receipt and release.
   The undersigned further acknowledges that the aforesaid payments and distributions have been properly made and does for itself and its successors and assigns hereby release, remise and forever discharge Irene D. Mailhiot, as Personal Representative and in her individual capacity as well, of and from all liability, responsibility and accountability by reason of any and all of her acts, doings and omissions to act in connection with the administration of said estate and in making the payments as stated herein.

2. The Probate Court found that Ms. Mailhiot charged the Estate at a rate of $35.00 per hour. According to Ms. Mailhiot's post-hearing brief, she charged the Estate for 56 trips to Maine. For each trip, Ms. Mailhiot charged seven (7) hours in alleged travel time. The court, however, found "convincing evidence that Ms. Mailhiot was living in the home she was trying to sell."

were excessive pursuant to the standards set forth in 18–A M.R.S.A. §§ 3–719 [3] and 3–721. [4]

[¶ 7] A testimonial hearing was held on March 24, 2000. [5] The Probate Court found:

> [T]he administrative fees charged by Ms. Mailhiot were excessive under the standards of compensation set forth in 18–A M.R.S.A. §§ 3–719 and 3–721. The Court will allow the amount of $10,000.00 for the Personal Representative's administrative fees. Ms. Mailhiot will reimburse the Estate in the amount of $26,000.00 for administrative fee overcharges. In addition, she will reimburse the Estate in the amount of $3,500.00 for the cost of the legal settlement caused by her misfeasance.

> In addition to the administrative fees, Ms. Mailhiot charged the Estate $14,113.26 for food, travel, auto, parking, [and] tolls, including two to three lunches per week at a lavish local restaurant. These charges are unreasonable and unsupported by the evidence. The Court will allow the amount of $3,000.00 for these expenses. Ms. Mailhiot will reimburse the Estate in the amount of $11,113.26 for Personal Representative expense overcharges.

> The Court finds that during the period of her administration, Irene Mailhiot systematically and intentionally abused

3. **§ 3–719. Compensation of personal representative**

A personal representative is entitled to reasonable compensation for his services. If a will provides for compensation of the personal representative and there is no contract with the decedent regarding compensation, he may renounce the provision before qualifying and be entitled to reasonable compensation. A personal representative also may renounce his right to all or any part of the compensation. A written renunciation of fee may be filed with the court.

18–A M.R.S.A. § 3–719 (1998).

4. **§ 3–721. Proceedings for review of employment of agents and compensation of personal representatives and employees of estate**

(a) After notice to all interested person, on petition of an interested person or on appropriate motion if administration is supervised, the propriety of employment of any person by a personal representative, including the employment of any attorney, auditor, investment advisor or other specialized agent or assistant, the reasonableness of the compensation of any person so employed, or the reasonableness of the compensation determined by the personal representative for his own services, may be reviewed by the court. Any person who has received excessive compensation from an estate for services rendered may be ordered to make appropriate refunds.

(b) Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly;

(2) The likelihood, if apparent to the personal representative, that the acceptance of the particular employment will preclude the person employed from other employment;

(3) The fee customarily charged in the locality for similar services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the personal representative or by the circumstances;

(6) The experience, reputation and ability of the person performing the services.

18–A M.R.S.A. § 3–721 (1998).

5. Mailhiot has not presented us with a transcript of the Probate Court hearing. Nor does she challenge the findings of the court. Because Mailhiot does not challenge any factual finding of the trial court, but merely challenges the court's legal conclusion that Mailhiot must reimburse the estate for the entire overcharge not just MSSPA's proportionate share, and because that determination did not require the exercise of the court's discretion, we undertake a review without the necessity of a factual record.

her authority by grossly overcharging the Estate for personal gain wherever and whenever she could, and her conduct was a breach of her fiduciary responsibilities as Personal Representative. MSSPA has spent $4,700.00 in attorney's fees in its challenge to Irene Mailhiot's proposed closing of the Estate. The Court finds these fees reasonable and orders that Irene Mailhiot be surcharged the amount of $4,700.00 so that the Estate may reimburse MSSPA for their attorney fees.[6]

The sum which Irene Mailhiot has been ordered to pay to the Estate in reimbursement will be divided amongst the Devisees according to the percentages of the residuary to which they are entitled by the Last Will and Testament of Robert E. Sweetland.

## II. DISCUSSION

■ [¶ 8] Mailhiot contends that the Probate Court exceeded its authority when it ordered her to reimburse the full $40,613.26 to the Estate. Mailhiot does not dispute the court's finding with respect to the excessive administration fees and expenses. Rather, Mailhiot argues that, because each of the other five beneficiaries signed the "Receipt and Release,"[7] they have released her from liability for her actions as personal representative, including her liability for the full $40,613.26.

Accordingly, Mailhiot argues she only has to reimburse the Estate $4,061.33, an amount equal to 10% of $40,613.26, MSSPA's share in the residuary.

[¶ 9] The Probate Code provides, in pertinent part, that "the reasonableness of the compensation determined by the personal representative for his own services, may be reviewed by the court. Any person who has received excessive compensation from an estate for services rendered may be ordered to make appropriate refunds." 18–A M.R.S.A. § 3–721(a) (1998).[8] The plain language of the statute vests the Probate Court with the authority to order "appropriate refunds" from any person who has received excessive compensation.

■ [¶ 10] The reimbursement of overcharged personal representative fees is analogous to a case of improperly charged attorney fees. If attorney fees are improperly charged to the estate, they are returned to the estate because the improper fees constitute a damage or loss to the estate. *See Estate of Stowell,* 595 A.2d 1022, 1026 (Me.1991). Similarly, Mailhiot's overcharge resulted in a damage or loss to the Estate, entitling the Estate to a reimbursement.

■ [¶ 11] In addition, a personal representative is liable to the beneficiaries of an estate for damage or loss to the estate resulting from a breach of their fiduciary

---

**6.** Ms. Mailhiot does not appeal the Probate Court's Order surcharging her in the amount of $4,700 for the attorney fees incurred by MSSPA in challenging her fees.

**7.** The "Receipt and Release" stated, in relevant part that,

[t]he undersigned further acknowledges that the aforesaid payments and distribution have been properly made and does for itself and its successors and assigns hereby release, remise and forever discharge Irene D. Mailhiot, as Personal Representative and in her individual capacity as well, of and from all liability, responsibility and ac-

countability by reason of any and all of her acts, doings and omissions to act in connection with the administration of said estate and in making the payments as stated herein.

**8.** Comments to the Uniform Probate Code, reprinted in the Maine Probate Code state that "it seem[s] wise to emphasize that any interested person can get judicial review of fees if he desires it. Also, if excessive fees have been paid, this section [3–721] provides a quick and efficient remedy."

18–A M.R.S.A. § 3–721 (1998).

duty. *Harrington v. Lord,* 1997 ME 201, ¶ 12, 704 A.2d 1211, 1215 (citing 18–A M.R.S.A. § 3–712 (1981)); *see also Estate of Stowell,* 595 A.2d 1022, 1026 (Me.1991). A personal representative is a fiduciary subject to the same duty of loyalty and liability for breach as the trustee of an express trust. *See* 18–A M.R.S.A. § 3–712 (1998). The Probate Court found that Mailhiot "systematically and intentionally abused her authority by grossly over-charging the Estate for personal gain wherever and whenever she could," and that, consequently, she had breached her fiduciary duty. Just because Mailhiot "was open and forthcoming" about the excessive fees she charged does not change the fact that she breached her fiduciary duty when she overcharged the Estate. Accordingly, because Mailhiot intentionally breached her fiduciary duty, she must reimburse the Estate in the amount of $40,613.26.

The entry is:

Judgment affirmed. Remand to the Cumberland County Probate Court for the assessment of attorney fees on this appeal.