MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 125
Docket:        Wal-16-120
Submitted
  On Briefs:   November 29, 2016
Decided:       June 20, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

GUARDIANSHIP AND CONSERVATORSHIP OF VINCENT M. JONES


HJELM, J.

[¶1]  Kenneth E. Jones, conservator and guardian for his son Vincent M. Jones, and Susan C. Thiem, Esq., Kenneth's counsel, appeal from two orders issued by the Waldo County Probate Court (*Longley, J.*).[1]  In the first of these orders, the court dissolved and replaced a supplemental needs trust that had been created for Vincent's estate.  Kenneth argues that, for several reasons, the court was procedurally barred from creating a new trust for Vincent.  In the second order at issue on this appeal, the court directed Attorney Thiem, who created the original trust, to disgorge legal fees paid to her by Vincent and conditionally to pay additional amounts.  Attorney Thiem argues on appeal that this order deprived her of due process.  We affirm the court's

---

[1]  There is no appellee.

order creating the replacement supplemental needs trust, but we vacate the payment order against Attorney Thiem and remand for further proceedings.

## I. BACKGROUND

[¶2]   In 2008, Kenneth E. Jones filed a petition in the Waldo County Probate Court to be appointed guardian and conservator for his incapacitated adult son, Vincent M. Jones, because of Vincent's debilitating mental illness. The court (*Longley, J.*) granted the petition in August 2008.

[¶3]   Kenneth retained Attorney Thiem as counsel as early as December 2008.   In March 2013, Kenneth filed a petition with the Probate Court for retroactive judicial approval of a supplemental needs trust benefiting Vincent.[2]   In the petition, Kenneth stated that in August 2012, Vincent had been moved from a psychiatric hospital to the Charlotte White Center (CWC), a long-term care facility.   Kenneth further stated that Vincent was receiving Social Security and MaineCare benefits, and that because Vincent was now a long-term care resident, he could continue to receive MaineCare benefits if less than $10,000 were maintained in a trust.   After a telephonic hearing, the court issued an order in June 2013, concluding that the

---

[2]   A supplemental needs trust, or supplemental care trust, is "a type of trust that holds funds on behalf of a disabled person . . . and that allows the beneficiary's eligibility for certain Social Security and state health benefits to remain unaffected by the funds held in trust."   *DeCambre v. Brookline Hous. Auth.*, 826 F.3d 1, 4 (1st Cir. 2016) (citing 42 U.S.C.S. § 1396p(d)(4)(A) (LEXIS through Pub. L. No. 115-37)).

trust was in Vincent's best interest and retroactively authorizing Kenneth to create the trust.

[¶4]    In October 2013, Kenneth filed the third account of his guardianship detailing the assets and financial transactions of Vincent's estate from June 2012 to September 2013.  *See* 18-A M.R.S. § 5-419 (2016).  The account indicated that in January 2013, the estate had made a $25,000 payment, plus additional payments totaling $5,292, to CWC.  In response, the court appointed a visitor to "scrutinize the billing, determine if the ward is receiving services promised, [and] assess amounts charged to determine reasonableness and appropriateness."  *See id.* § 5-419(c).  The visitor subsequently filed a letter with the court recommending that "a detailed invoice be required from CWC to confirm the reasonableness of the $25,000 back payment."

[¶5]  After holding a telephonic status conference in January 2014, the court appointed a second visitor to research the $25,000 payment.  That visitor filed a report in May 2014, along with copies of an invoice for more than $62,000 arising from CWC's care of Vincent from August through November 2012; correspondence from Attorney Thiem to CWC accompanying the $25,000 payment from Vincent's trust account, in which Attorney Thiem

4

asserted that "Medicaid should have paid for the first 100 days of care" and thus that $25,000 was an overpayment; and a response from CWC's chief financial officer. The CFO's letter stated that Attorney Thiem had misunderstood the funding sources and that CWC was owed for Vincent's care until Medicaid began covering the payments in December 2012, but that CWC had agreed to discount the charges and accept $25,000 as full payment as an accommodation to Vincent.

[¶6] In July 2014, Attorney Thiem filed a motion for recusal and disqualification of Judge Longley, asserting that during the January 2014 conference,[3] the court "proceeded to berate [Attorney Thiem], intimating that [her] legal fees were excessive" and that her "procedural blunders" adversely affected Vincent's assets. Attorney Thiem subsequently moved to dismiss that motion "in light of the [court's] threat [allegedly made at another hearing that is not noted in the docket], and to protect my client's interest."

[¶7] In orders issued on September 9, 2014, the court denied both Attorney Thiem's motion to dismiss the motion to recuse and the motion for recusal itself, stating that the court had "acted even-handedly to date" and could continue to do so. The court also issued an order noting that it had

---

[3] The record does not indicate whether the hearing was recorded, but in any event a transcript has not been included in the record.

found a "discrepancy" and a "dramatic change from the previous accounting" in the third account—the $25,000 payment to CWC—which, according to the court, the conservator, through Attorney Thiem, was unable to adequately explain. In that order, the court concluded that an error by Attorney Thiem had necessitated the $25,000 payment. In October, the court ordered Kenneth to file an explanation for "the $25,000 loss of assets from [Vincent's] estate" and to address the issue of "[s]anctions for [Attorney Thiem] in light of delays and mistakes resulting in the $25,000 loss of assets from [Vincent's] estate."

[¶8] On November 24, 2014, Attorney Thiem filed a renewed motion for Judge Longley to recuse herself from the proceeding. Additionally, Kenneth filed a petition for leave to resign as Vincent's conservator based on his stated belief that the court was dissatisfied with his actions. Kenneth subsequently filed both an amended third account and a fourth account to bring the accountings current through October 2014. Later in December, the court appointed an attorney to represent Vincent's interests in connection with the third account and the $25,000 payment to CWC.

[¶9] In January 2015, Attorney Thiem filed a motion to withdraw as counsel for Kenneth, asserting in part that her contentious relationship with Judge Longley had made it difficult for Kenneth to carry out his

6

responsibilities as Vincent's conservator and guardian. The court held a telephonic conference, in which Attorney Thiem participated, on February 10, 2015. Judge Longley issued an order on March 24, 2015, denying the renewed motion for recusal but granting Attorney Thiem's motion to withdraw as counsel.

[¶10]  This left several matters pending, including a ruling on the third and fourth accounts pursuant to 18-A M.R.S. § 5-419, and Kenneth's petition to withdraw as conservator.  From June to December 2015, the court held five telephonic conferences on these outstanding matters, ultimately holding a hearing over two days in January and February 2016.[4]  Ten different notices of conference and hearing dates were sent to Kenneth, Vincent's appointed counsel, and the visitor.  None of the notices was sent to Attorney Thiem, who had already been given leave to withdraw from the case.  The last two notices of hearing, which set out the two dates when the hearing was actually held, referred to the "Court's Motion to Reform the Trust."

[¶11]  On the second hearing day, the court stated its view that the supplemental needs trust it had approved in 2013 was unnecessary because the funds it was intended to protect were already exempt from MaineCare's

---

[4]  The record on appeal includes a transcript of the second hearing day but not of the first.

eligibility calculations. The court implied that Attorney Thiem had conflated Medicaid and Medicare in her analysis of Vincent's situation, and stated that it wanted to issue an order that would "recoup . . . the legal expenses paid to date because of the situation that's resulted, which has been the loss of [Vincent's] life savings." The court further stated that reimbursement was needed because "justice requires that something be put in the [supplemental] needs trust" and that "a terrible legal mistake happened."

[¶12] The court subsequently issued two orders on matters addressed at the hearing. These orders are the subject of this appeal. In one, issued on February 23, 2016, the court found that the conservator, represented by Attorney Thiem, failed to create a trust in time to protect the $25,000 paid from Vincent's estate to CWC, and that Thiem's legal fees of $3,638.35 were "unreasonable and excessive."[5] The court ordered "recovery of legal fees paid [Attorney] Thiem," which the court directed her to pay by March 1, 2016. The court further ordered that if Attorney Thiem did not disgorge her attorney fees by that date, the amount due from her would "double[] for each day of delay until recovery equals the $25,000 loss of the father's savings for his disabled son, plus court costs." *See infra* n.8.

---

[5] In the order, the court also accepted Kenneth's resignation as conservator, and another person was appointed to assume that responsibility. Kenneth continues to serve as Vincent's guardian.

8

[¶13]  In the second order, issued two days later, the court dissolved the supplemental needs trust it had approved post hoc in June 2013.  The court further ordered the establishment of a replacement supplemental needs trust, and, "[t]o save the time, money and energies of as many involved as possible," the court itself drafted and issued the instrument creating that replacement trust.  The court attached the new trust instrument to its order.

[¶14]  Attorney Thiem entered a limited appearance on behalf of Kenneth as guardian and filed a "motion to dismiss" the two February orders.  The court denied the motion, and Kenneth and Attorney Thiem timely appealed.

## II.  DISCUSSION

[¶15]  Kenneth asserts that the court erred by creating the second supplemental needs trust for Vincent, and Attorney Thiem argues that the court's imposition of financial sanctions against her was an abuse of its discretion.  We consider these issues in turn.

A.    Creation of a Replacement Supplemental Needs Trust

[¶16]  Kenneth challenges the process by which, in February 2016, the court dissolved the trust it had authorized in June 2013 and created another to replace it.  Without raising any issue about the substantive provisions of the

successor trust, Kenneth argues that 4 M.R.S. § 309 (2016) prohibited the court from independently drafting the instrument that created the replacement supplemental needs trust and then approving that trust.[6] Because Kenneth did not present this argument to the Probate Court, he has not preserved it for appellate review. *See In re Christopher H.*, 2011 ME 13, ¶ 15, 12 A.3d 64. We consider the argument, however, to the extent that he asserts the order is "void" for lack of statutory authority pursuant to section 309. *See Estate of Reed*, 2016 ME 90, ¶ 6, 142 A.3d 578 ("The Probate Court is a statutory court of limited jurisdiction and its actions are void unless taken pursuant to statutory authority." (quotation marks omitted)); *Laprel v. Going*, 2014 ME 84, ¶ 15, 96 A.3d 67.

---

[6] Kenneth also argues that the court was barred by principles of res judicata from creating the successor supplemental needs trust because it had already approved the first trust. This argument is without merit. Res judicata prevents the relitigation of identical factual issues that, under particular circumstances, were already decided, and of entire claims that were or could have been litigated in a prior action. *See Portland Co. v. City of Portland*, 2009 ME 98, ¶ 22, 979 A.2d 1279. Here, concluding that the first trust did not accomplish its ostensible objective, the court created a new trust that it determined could more effectively serve Vincent's needs. The order establishing the successor trust did not constitute the relitigation of a factual issue or cause of action, and therefore was not barred by res judicata.

Additionally, Kenneth asserts that the court erred by issuing the supplemental needs trust of its own accord, without a motion, notice, or hearing. The partial record that Kenneth has provided shows that two notices of hearing sent by the clerk to Kenneth and other interested parties in January 2016 expressly referred to the "Court's Motion to Reform the Trust." This was sufficient to place Kenneth on notice that the court intended to take up that matter. Further, the transcript that Kenneth did include in the record, which is limited to the second hearing date, demonstrates that, contrary to Kenneth's contention, a hearing was held on the issue of a replacement trust.

[¶17]  Section 309 provides in relevant part, "No judge of probate shall draft or aid in drafting any document or paper which he is by law required to pass upon."  The Probate Code authorizes the probate courts to manage the affairs of a protected person and, as one aspect of that authority, expressly allows the court to create a trust of property of the person's estate.  *See* 18-A M.R.S. § 5-408(3) (2016).  To interpret section 309 as Kenneth argues would effectively prohibit a probate court from exercising its statutory authority to create trusts designed to safeguard a protected person's property.  To the extent that there is a conflict between the statutes, because section 5-408(3) is narrower than the more generally framed provision of section 309, the former controls.  *See Butler v. Killoran*, 1998 ME 147, ¶ 11, 714 A.2d 129 ("[A] statute dealing with a subject specifically prevails over another statute dealing with the same subject generally.").  Here, notwithstanding section 309, the Probate Court judge drafted and issued the successor trust instrument pursuant to the express authority vested in the probate courts by the Legislature, and the order therefore is not void.

B.     Order of Payment Issued Against Attorney Thiem

[¶18]  Asserting that she was not given notice or an opportunity to be heard, Attorney Thiem argues that the court erred when it issued the following order:

> [T]his [c]ourt orders . . . [b]y Mar. 1, 2016, recovery of legal fees paid Ms. Thiem, then doubled for each day of delay until recovery equals the $25,000 loss of the father's savings for his disabled son, plus court costs.[7]

Although the order does not explicitly identify the person who is required to make the payment, it is apparent from the language—and from the court's comments in the order criticizing Attorney Thiem's legal work in the case—that this is an order requiring Attorney Thiem to disgorge her legal fees and potentially pay the additional amount.[8]

---

7  The court relied on two statutes, 18-A M.R.S. §§ 5-414 and 3-721(a) (2016), as authority to order disgorgement of attorney fees based on its conclusion that the fees were excessive.  It may be that neither of these provisions applies to the circumstances of this case.  Section 5-414 provides that a lawyer or other professional who is *appointed* to participate in a protective proceeding is entitled to reasonable compensation paid by the estate.  Here, Attorney Thiem was not appointed by the court to represent the conservator.  Section 3-721(a) authorizes a probate court to determine the reasonableness of attorney fees paid by a *decedent's* estate.  *See Estate of Robert E. Sweetland*, 2001 ME 21, ¶ 9, 770 A.2d 1017.  There is no parallel statutory provision, however, applicable to a *protected person's* estate.

We do not address whether either of these statutes authorized the court to take the action at issue here because Attorney Thiem has not raised such a challenge and because we are remanding the matter for other reasons.

8  It is less clear *to whom* Attorney Thiem is to make the payment.  The order states that the $25,000 payment to CWC had been made from "the father's savings."  On the other hand, evidence in the record—the amended third account filed in December 2014 and the visitor's report filed in May 2014—indicates that the payment came out of Vincent's trust account.  Because the transcript

12

[¶19] "We review de novo whether an individual was afforded procedural due process." *In re Adden B.*, 2016 ME 113, ¶ 7, 144 A.3d 1158. "The essence of due process is notice and an opportunity to be heard." *Michaud v. Mut. Fire, Marine & Inland Ins. Co.*, 505 A.2d 786, 789 (Me. 1986); *see Dowling v. Bangor Hous. Auth.*, 2006 ME 136, ¶ 12, 910 A.2d 376; *Int'l Union v. Bagwell*, 512 U.S. 821, 832-33 (1994). Where procedural due process rights are at issue, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). This means that the state "must say what it intends to do and then give affected persons the chance to speak out against it." *Rivera-Corraliza v. Puig-Morales*, 794 F.3d 208, 223 (1st Cir. 2015).

[¶20] The court's payment order clearly implicates Attorney Thiem's property interests. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 766 (2005) (noting that rights with an "ascertainable money value" fall within the traditional concept of property (quotation marks omitted)). Accordingly, she

from the January 19, 2016, hearing date has not been provided to us, we cannot know whether the court was presented with information different from the evidence presented in the record. On remand, the court will have the opportunity to clarify this issue.

was entitled to process consisting of notice and an opportunity to be heard. She was provided, however, with neither.

[¶21]  According to the record on appeal, once the court granted Attorney Thiem's motion to withdraw as Kenneth's attorney in late March 2015, the court did not send her notices of any pre-hearing conferences or of the hearing itself that resulted in the payment order.  In the absence of *any* notice whatever, the order that runs against Attorney Thiem personally must be set aside.[9] *Cf. Linscott v. Foy*, 1998 ME 206, ¶ 22 n.12, 716 A.2d 1017.

[¶22]  In addition to ordering reimbursement of attorney fees actually paid to Attorney Thiem, the court ordered her to pay *additional* amounts, up to a total of $25,000—the amount that the court concluded was unnecessarily paid to CWC—if Attorney Thiem did not disgorge the attorney fees themselves by a date certain.  As deficient as was the process resulting in the order affecting attorney fees themselves, the portion of the order making Attorney Thiem conditionally liable for amounts in excess of the attorney fees she was paid is even more flawed.

---

[9]  Attorney Thiem, prior to her withdrawal, was on notice of the court's concerns about both whether she had made mistakes in her legal work as the conservator's attorney and whether those mistakes resulted in an unnecessary obligation for Vincent to pay $25,000 to CWC.  Attorney Thiem's awareness of the court's concerns prior to her withdrawal, however, is not a substitute for the notice she was entitled to receive of the actual adjudication of the reasonableness of her legal fees.

14

[¶23]  The court's order issued against Attorney Thiem does not explain the nature and purpose of this conditional extended liability.  Consequently, it is impossible to determine prospectively the nature of the process that Attorney Thiem will be due should the court seek to pursue imposition of these additional fees.  *See Zinermon*, 494 U.S. at 127 (stating that due process is "a flexible concept that varies with the particular situation"); *Splude v. Dugan*, 2003 ME 88, ¶ 6, 828 A.2d 772.

[¶24]  For example, if the additional increasing payments constitute a coercive sanction pursuant to M.R. Civ. P. 66,[10] the court must follow the process prescribed in that Rule.  *See Guardianship of Isabella Ard*, 2017 ME 12, ¶¶ 22-24, 154 A.3d 609; *Cayer v. Town of Madawaska*, 2009 ME 122, ¶ 8, 984 A.2d 207 (explaining that for remedial contempt sanctions, Rule 66 "requires the court to order service of a contempt subpoena on the alleged contemnor, and to conduct a hearing and take evidence by testimony, depositions, or affidavits").  Or, if the order was an effort by the court to assess compensatory damages to benefit Vincent's estate for the amount the court felt was lost due to Attorney Thiem's allegedly deficient representation, then—even aside from any questions concerning the court's standing to do

---

[10]    Maine Rule of Civil Procedure 66 is applicable to the Probate Court.  *See* M.R. Civ. P. 66(a)(2)(F).

so[11]—the order may amount to a determination of legal malpractice and damages, which might entitle Attorney Thiem to the process that accompanies civil money damages claims, including the right to trial by jury. *Cf. Garland v. Roy*, 2009 ME 86, 976 A.2d 940*.*

[¶25]  Regardless of the nature and purpose of this additional layer of potential personal liability, Attorney Thiem received no process, and we vacate the order. *See Soley v. Karll*, 2004 ME 89, ¶ 15, 853 A.2d 755 (vacating a court's award of attorney fees as damages, and remanding for clarification, where the award was not authorized by any contract or statute and the court failed to explain the basis for its authority).  Because we cannot glean the character of this portion of the order, we do not reach the question of the nature of the process that the court must provide on remand.

### III.  CONCLUSION

[¶26]  We affirm the order creating a replacement supplemental needs trust for Vincent's estate.  The order requiring Attorney Thiem to disgorge attorney fees and exposing her to liability for even greater amounts, however, was not predicated on minimum process requirements to which Attorney

---

[11]  The record before us contains no indication that Vincent, through his court-appointed counsel or otherwise, took steps to pursue a claim against Attorney Thiem or to otherwise recover any sum of money from her.

Thiem was entitled. Accordingly, we vacate the payment order and remand for further proceedings.

The entry is:

> Judgment entered February 25, 2016, affirmed.
> Judgment entered February 23, 2016, vacated.
> Remanded for further proceedings consistent with this opinion.

---

Susan C. Thiem, Esq., Law Office of Susan C. Thiem, Lincolnville, pro se and for appellant Kenneth Jones

Waldo County Probate Court docket number 2008-148-6
FOR CLERK REFERENCE ONLY