MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 78
Docket:      Yor-17-388
Argued:      April 11, 2018
Decided:     June 19, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ROY BLUM

GORMAN, J.

[¶1]  The State of Maine appeals from a judgment of the trial court (York County, *Cashman, J.*) granting Roy Blum's motion to dismiss the count against him alleging violation of a protective order (Class D), 19-A M.R.S. § 4011(1) (2017).  The State contends that the court erred by concluding that the bail condition order prohibiting Blum from possessing a "dangerous weapon" issued by a New Hampshire bail commissioner is not a "similar order issued by a court . . . of another state," pursuant to section 4011(1)(A), and therefore the State could not prosecute Blum for an alleged violation of that order.  We hold that the New Hampshire order is a "similar order," vacate the judgment, and remand the case to the trial court.

## I. BACKGROUND

[¶2]  On September 14, 2015, Blum was arrested and charged in New Hampshire with criminal threatening and domestic violence.  He was released later that day on bail subject to a "domestic violence/stalking criminal order of protection including orders and conditions of bail" (Conditions Order), signed by a New Hampshire bail commissioner.  The Conditions Order notified Blum that he had the "opportunity to be heard before a judge on bail issues within 24/48 hours"; that the "order shall be enforced, even without registration, by the courts of any state"; and that violations of the Conditions Order "are subject to state and federal criminal penalties."  The Conditions Order required Blum to "refrain" from, among other things, "possessing a firearm, destructive device, dangerous weapon, or ammunition."  Blum signed the Conditions Order acknowledging notice of the conditions and the potential penalties associated with a violation.  Unless changed by another court order, the Conditions Order, with its prohibitions, was to remain in effect until Blum's arraignment, which was set for November 16, 2015.

[¶3]  The State alleges that on September 18, 2015—four days after his arrest and the imposition of the Conditions Order in New Hampshire—Blum went to the Kittery Trading Post in Kittery, Maine, purchased a knife, and asked

the store clerk if the store had any full-face masks resembling those used by "SWAT" teams. Concerned by Blum's behavior, the store clerk notified the Kittery Police Department. After learning that Blum was still subject to the New Hampshire Conditions Order that prohibited him from possessing a "dangerous weapon," the police stopped Blum and found him in possession of three knives, including a large tactical knife he had purchased earlier that day.

[¶4] Based on these allegations, a grand jury first indicted Blum on December 7, 2015, for violating a condition of release (Class C), 15 M.R.S. § 1092(1)(B) (2017) (Count 1), and violating a protective order (Class D), 19-A M.R.S. § 4011(1) (Count 2). Blum moved to dismiss the charges and, after a nontestimonial hearing, the trial court (York County, *O'Neil, J.*) granted Blum's motion by order dated March 14, 2016. As to Count 2, the court first stated that "[i]n Maine a protective order is defined and set out in 19 M.R.S. § 4007, *et seq.*," apparently intending to reference the Protection from Abuse Act, 19-A M.R.S. §§ 4001-4014 (2017). It then declared that "[n]o such order was issued in this case."

[¶5] The court also referenced "RSA 173-B:1," and observed that "the applicable New Hampshire statutes" established a process for obtaining a

4

protective order in New Hampshire[1] that was "substantially similar" to the process for obtaining a protection from abuse order in Maine. *Compare* N.H. Rev. Stat. Ann. §§ 173-B:1 to :26 (LEXIS through Act 78 of the 2018 Reg. Sess.) *with* 19-A M.R.S. §§ 4001-4014. Again, the court stated that no such order existed in this case.

[¶6] Although the court acknowledged that the "process for obtaining a temporary [protection from abuse] order has some similarity to a bail order in New Hampshire these are two separate processes with some different requirements." Because the Conditions Order was issued after an arrest and not pursuant to N.H. Rev. Stat. Ann. §§ 173-B:1 to :26, the court concluded that it was not a "similar order issued by a court . . . of another state" for the purposes of section 4011(1)(A) and dismissed Count 2 against Blum. The court denied the State's motion for reconsideration but clarified that the dismissal was without prejudice.

---

[1] Chapter 173-B of the New Hampshire Revised Statutes Annotated, N.H. Rev. Stat. Ann. §§ 173-B:1 to :26 (LEXIS through Act 78 of the 2018 Reg. Sess.), "governs the protection of persons from domestic violence." *Knight v. Maher*, 20 A.3d 901, 903 (N.H. 2011). As the trial court correctly observed, these statutes set out procedures nearly identical to those found in Maine's protection from abuse statutes. 19-A M.R.S. §§ 4001-4014 (2017). Because of this similarity, we need not consider whether the Conditions Order is similar to a protection from abuse order issued pursuant to N.H. Rev. Stat. Ann. §§ 173-B:1 to :26 and discuss Maine's protection from abuse statutes for this opinion.

[¶7]  On January 4, 2017, a second grand jury indicted Blum for his September 18, 2015, actions, charging him with the same two counts.[2]  Blum again moved to dismiss, arguing that any alleged violation of the Conditions Order in Maine could not subject him to prosecution because the order failed to meet the definition of a "similar order" of protection "issued by a court . . . of another state" pursuant to section 4011(1)(A).  After a nontestimonial hearing, by order dated August 14, 2017, the court (*Cashman, J.*) granted Blum's motion to dismiss, and adopted the trial court's (*O'Neil, J.*) previous order concluding that the Conditions Order was not a "similar order" of protection.  With the approval of the Attorney General, the State filed this timely appeal challenging only the dismissal of Count 2, violation of a protective order.[3]  15 M.R.S. § 2115-A(1), (5) (2017); M.R. App. P. 2A(f)(2), 21.

---

[2] The State apparently waited to determine whether it should pursue prosecution of Blum again until we issued our decision in *State v. Hederson*, 2016 ME 151, 149 A.3d 539, on October 13, 2016. Hederson had restrictions imposed on him by a New Hampshire "domestic violence/stalking criminal order of protection including orders and conditions of bail" that was nearly identical to the order imposed on Blum, and Hederson—like Blum—was prosecuted in Maine with violating a protective order (Class D), 19-A M.R.S. § 4011(1), for an alleged violation of that order. *Hederson*, 2016 ME 151, ¶¶ 1-4, 149 A.3d 539.  In *Hederson*, we did not reach the merits of whether the New Hampshire order constituted a "similar order issued by a court . . . of another state" pursuant to section 4011(1)(A). *See id.* ¶¶ 7-8.

[3] Because the State does not challenge the dismissal of Count 1 on appeal, we do not discuss it further.

## II. DISCUSSION

[¶8]  This case requires us to determine whether the Conditions Order controlling Blum's behavior on September 18, 2015, was a "similar order issued by a court ... of another state." 19-A M.R.S. § 4011(1)(A). We "review questions of statutory interpretation de novo." *State v. Christen*, 2009 ME 78, ¶ 12, 976 A.2d 980.  "In interpreting these provisions, we first look to the plain language of the provisions to determine their meaning.  If the language is unambiguous, we interpret the provisions according to their unambiguous meaning unless the result is illogical or absurd." *MaineToday Media, Inc. v. State*, 2013 ME 100, ¶ 6, 82 A.3d 104 (citations omitted) (quotation marks omitted).  "In applying these principles, we examine the entirety of the statute, giving due weight to design, structure, and purpose as well as to aggregate language."  *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 22, 107 A.3d 621 (quotation marks omitted).

[¶9]  Thus, we begin with the statutory language.  *See State v. Dubois Livestock, Inc.*, 2017 ME 223, ¶ 6, 174 A.3d 308.  The State charged Blum with violating 19-A M.R.S. § 4011(1), which criminalizes violations of protection orders and provides in pertinent part:

> **1.  Crime committed.**  Except as provided in subsections 2 and 4, violation of the following is a Class D crime when the defendant has

prior actual notice, which may be notice by means other than service in hand, of the order or agreement:

> **A.**  A temporary, emergency, interim or final protective order, an order of a tribal court of the Passamaquoddy Tribe or the Penobscot Nation *or a similar order issued by a court of the United States or of another state*, territory, commonwealth or tribe; or
>
> **B.**  A court-approved consent agreement.

(Emphasis added.)  The term "similar order" is not defined within title 19-A or in any other Maine statute.[4]  Therefore, to assist in our plain language analysis, we turn to the dictionary definition of the word "similar," which includes (1) "having characteristics in common: very much alike: COMPARABLE"; (2) "alike in substance or essentials: CORRESPONDING"; and (3) "one that resembles another: COUNTERPART."  *Webster's Third New International Dictionary of the English Language Unabridged* 2120 (2002) (*Webster's*); *see State Tax Assessor v. MCI Commc'ns Servs., Inc.*, 2017 ME 119, ¶ 14, 164 A.3d 952.

[¶10]  In addition to the plain language of the statute, and the common meaning of the words within that statute, we must also consider its location and context.  *See Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me. 1994) ("In addition to examining the plain language, we also consider the whole statutory

---

[4] The term "similar order" is, however, used in several other statutes to refer to orders from other jurisdictions.  *E.g.*, 32 M.R.S. § 16306(1)(C) (2017), 17-A M.R.S. § 210-A(1)(C) (2017), and 15 M.R.S. § 321(6) (2017).

scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." (quotation marks omitted)). Section 4011 is located within Maine's protection from abuse statutes, which comprise fifteen sections found in title 19-A, part 4, chapter 101, and establish the procedures and process for obtaining protection from abuse orders. *See* 19-A M.R.S. §§ 4001-4014. In the first of these sections, the Legislature articulated its purposes for enacting the remaining sections and gave the courts responsible for handling these cases some very specific directives. It explained that

> [t]he *court shall liberally construe and apply* this chapter to promote the following underlying purposes:
>
> **1. Recognition.** *To recognize domestic abuse as a serious crime against the individual and society*, producing an unhealthy and dangerous family environment, resulting in a pattern of escalating abuse, including violence, that frequently culminates in intrafamily homicide and creating an atmosphere that is not conducive to healthy childhood development;
>
> **2. Protection.** To allow family and household members who are victims of domestic abuse *to obtain expeditious and effective protection against further abuse* so that the lives of the nonabusing family or household members are as secure and uninterrupted as possible;
>
> **3. Enforcement.** To provide protection by *promptly entering and diligently enforcing court orders that prohibit abuse* and, when necessary, by reducing the abuser's access to the victim and addressing related issues of parental rights and responsibilities

and economic support so that victims are not trapped in abusive situations by fear of retaliation, loss of a child or financial dependence;

**4. Prevention.** *To expand the power of the justice system to respond effectively to situations of domestic abuse*, to clarify the responsibilities and support the efforts of law enforcement officers, prosecutors and judicial officers to provide immediate, effective assistance and protection for victims of abuse and to recognize the crucial role of law enforcement officers in preventing further incidents of abuse and in assisting the victims of abuse.

19-A M.R.S. § 4001(1)-(4) (emphases added).  The directive and these stated purposes guide our interpretation.[5]  *See Dickau*, 2014 ME 158, ¶ 21, 107 A.3d 621.

[¶11]  In order to determine whether the Conditions Order is a "similar order," we must consider (1) whether it is an "order issued by a court . . . of another state," (2) whether it is "similar" to a "temporary, emergency, interim or final protective order," and (3) whether permitting the State to prosecute Blum for violating the Conditions Order would violate his due process rights. 19-A M.R.S. § 4011(1)(A).  Because we must view the first two questions through the lens of the third, we begin with a discussion of due process.

---

[5]  When, as here, we are interpreting a criminal statute, we are also "guided by two interrelated rules of statutory construction: the rule of lenity, and the rule of strict construction." *State v. Pinkham*, 2016 ME 59, ¶ 14, 137 A.3d 203 (quotation marks omitted).  These rules apply, however, only if after interpreting the statutes at issue we conclude that the Legislature's true intent remains ambiguous. *See Callanan v. United States*, 364 U.S. 587, 596 (1961) ("The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.").

10

## A. Due Process

[¶12] In order for Maine to prosecute Blum for a violation of the Conditions Order as a "similar order issued by a court . . . of another state," 19-A M.R.S. § 4011(1)(A), the procedures by which the Conditions Order was issued must have been sufficient to protect his right to due process.[6] *See Guardianship of Jones*, 2017 ME 125, ¶ 19, 164 A.3d 969 ("Where procedural due process rights are at issue, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (quotation marks omitted)). "Thus the question in the case at bar is, what process is due." *In re Randy Scott B.*, 511 A.2d 450, 452 (Me. 1986).

[¶13] We have explained that "[t]he essence of due process is notice and an opportunity to be heard." *Guardianship of Jones*, 2017 ME 125, ¶ 19, 164 A.3d 969 (quotation marks omitted). "This means that the state must say what it intends to do and then give affected persons the chance to speak out against it." *Id.* (quotation marks omitted). We recognize that due process "is

---

[6] We assume, for the purposes of this analysis, that the New Hampshire Conditions Order applicable to Blum was executed properly and was therefore enforceable on the date of Blum's alleged violation in Maine. We take no position, however, on these factual issues.

not a static concept; rather, its requirements vary to assure the basic fairness of each particular action according to its circumstances." *In re Randy Scott B.*, 511 A.2d at 452 (quotation marks omitted). Therefore, in determining whether the Conditions Order is a "similar order," we will consider whether the processes used to impose and maintain the order were "similar" to the processes used to impose and maintain "temporary, emergency, interim or final protective order[s]" in Maine, with a focus on whether Blum was provided with adequate notice and an opportunity to be heard. 19-A M.R.S. § 4011(1)(A); *see In re Emma B.*, 2017 ME 187, ¶ 21, 169 A.3d 945 (explaining that notice and the opportunity to be heard are "the hallmarks of due process").

[¶14] Here, the Conditions Order that prohibited Blum from possessing a "dangerous weapon" was imposed after he had been arrested for a charge of domestic violence. Thus, unlike the limitations imposed by Maine's protection from abuse orders, the conditions were not imposed on Blum based on a sworn statement of his alleged victim. *See* 19-A M.R.S. § 4005(5). Because Blum was arrested on a criminal charge, however, and he makes no argument that the arresting officer lacked probable cause or that the bail commissioner acting on behalf of the New Hampshire court lacked authority to impose the Conditions Order, we assume that there was probable cause to support the imposition of

the order's conditions. *See* N.H. Rev. Stat. Ann. § 631:2-b(I)(d) (LEXIS through Act 78 of the 2018 Reg. Sess.) (providing that "[a] person is guilty of domestic violence" in New Hampshire if, among other acts, he or she "by physical conduct threatens to use a deadly weapon for the purpose of placing" a "family or household member or intimate partner" "in fear of imminent bodily injury"); N.H. Rev. Stat. Ann. § 173-B:10(II) ("[A]n arrest for abuse may be made without a warrant upon probable cause."); *State v. Blier*, 2017 ME 103, ¶ 9, 162 A.3d 829 ("Probable cause exists where . . . information would warrant a prudent and cautious person to believe that the arrestee did commit or is committing the felonious offense." (quotation marks omitted)). Although not identical, an unchallenged determination of probable cause that a defendant committed domestic violence is "similar" to a determination that there is "good cause" for the imposition of a temporary protection from abuse order. *See* 19-A M.R.S. § 4006(2) ("The court may enter temporary orders . . . on good cause shown in an ex parte proceeding" and "[i]mmediate and present danger of abuse to the [victim] constitutes good cause."); 19-A M.R.S. § 4002(1)(A)-(B) (defining "abuse" as, among other acts, "[a]ttempting to place or placing another in fear of bodily injury" or "[a]ttempting to cause or causing bodily injury or offensive physical contact" to a "family or household member or dating partner").

[¶15] A copy of the Conditions Order was given directly to Blum, just as a temporary protection from abuse order would be in Maine. 19-A M.R.S. § 4006(6). In addition, the Conditions Order explicitly warned Blum that its terms "*shall be enforced*, even without registration, *by the courts of any state*" and clearly explained that "[v]iolations of this order are subject to state and federal criminal penalties." (Emphases added.) The Conditions Order also notified Blum of his opportunity to be heard regarding the conditions of the order, stating that "[t]he defendant is advised that he/she has the further opportunity to be heard before a judge on bail issues within 24/48 hours of the request being made to the court." Blum signed the Conditions Order that contained both the warnings about the consequences of a violation and the notice of his right to challenge the order's conditions. The warnings provided by the Conditions Order are "similar" to the warnings contained in temporary protection orders, and the notice to Blum that the Conditions Order could be challenged is "similar" to the notice provided on temporary protection from abuse orders that its terms could be dissolved or modified.[7] *See* 19-A M.R.S.

---

[7] Maine's courts use Judicial Branch form PA-002 when issuing temporary orders pursuant to 19-A M.R.S. § 4006(2), (5) and (5-A). This form contains the following warning, "**WARNING TO THE DEFENDANT: VIOLATION OF THIS ORDER IS A CLASS D CRIME. AS LONG AS THIS ORDER IS IN EFFECT, YOU MUST OBEY IT**." It also notifies the defendant that he or she can challenge the order: "[i]f the defendant desires to dissolve or modify the above Temporary Order, the defendant must so move."

§ 4006(7). That Blum apparently chose not to seek judicial review of the Conditions Order in New Hampshire before his arrest in Maine is immaterial to our analysis: the opportunity was available to him. *See Michaud v. Mut. Fire, Marine & Inland Ins. Co.*, 505 A.2d 786, 791 (Me. 1986) ("We evaluate only the opportunity available at the time Mutual received notice to determine whether that opportunity was sufficiently meaningful to satisfy due process.").

[¶16] As the trial court correctly noted, the process through which the Conditions Order was imposed on Blum was not identical in all aspects to the process through which a protection from abuse order could have been imposed in Maine. As would have occurred with a protection from abuse order, however, the New Hampshire Conditions Order clearly notified Blum of the consequences of violating the order, and he had "the chance to speak out against" the conditions he allegedly violated in Maine. *Guardianship of Jones*, 2017 ME 125, ¶ 19, 164 A.3d 969 (quotation marks omitted); *see* 19-A M.R.S. § 4006(7); N.H. Rev. Stat. Ann. § 597:6-e(I) (LEXIS through Act 78 of the 2018 Reg. Sess.). We conclude, therefore, that the procedures were sufficiently "similar" to those of a temporary protection order such that permitting the State to prosecute Blum's alleged violation of the Conditions Order through section 4011(1) will not violate his due process rights.

B.     Court of Another State

[¶17]  Blum also argues that the Conditions Order cannot subject him to prosecution because it was not "issued by a court . . . of another state."  19-A M.R.S. § 4011(1)(A).  He contends that because a bail commissioner in New Hampshire, rather than a judge, signed it, the Conditions Order does not satisfy the requirements of section 4011(1)(A).  Recognizing Blum's concern, we note that New Hampshire treats an order signed by a bail commissioner as a "court order."  *See State v. Nott*, 821 A.2d 976, 978 (N.H. 2003) (holding that a bail commissioner's order for purposes of a criminal contempt charge was a "court order" because "[b]ail commissioners are subordinate officers of the court, appointed by the superior and district courts").

[¶18]  More specifically, New Hampshire identifies orders like the one issued to Blum as a "specialized form of bail order that was developed for use in criminal cases involving domestic violence . . . and was designed so that it can be entered into NCIC[8] as a criminal order of protection."  New Hampshire Office of the Attorney General, A Model Protocol for Law Enforcement Response to Domestic Violence Cases 35 (3rd ed. 2013) (New Hampshire Model Protocol). The New Hampshire Model Protocol explains that orders like the one issued to

---

    8   NCIC stands for the "National Crime Information Center" database.  *See Doucette v. City of Lewiston*, 1997 ME 157, ¶ 2, 697 A.2d 1292.

Blum are "considered 'temporary' when issued by a bail commissioner and then 'final' when reviewed by a judge at arraignment." *Id.* at 36. Although Blum's Conditions Order was "temporary" because he had not yet been arraigned, no party has claimed that it was not still in effect on the date that Blum allegedly purchased knives in Maine. *Id.* We conclude, therefore, that the Conditions Order was "issued by a court . . . of another state" for the purposes of section 4011(1)(A).

C.    "Similar Order"

[¶19]  The trial court's focus on the lack of identical procedures—rather than on the similarities in process and initiation—associated with the Conditions Order and a temporary protection from abuse order led it to a narrow interpretation of the term "similar order." 19-A M.R.S. § 4011(1)(A). Such a narrow reading of the term is in direct contravention of the Legislature's direction that "court[s] shall liberally construe and apply" the protection from abuse statutes to "diligently enforce[] court orders that prohibit abuse."[9]  19-A

---

[9]  The Legislature's directives in the protection from abuse statutes do not conflict with the "interrelated rules" of lenity and strict construction. *Pinkham*, 2016 ME 59, ¶ 14, 137 A.3d 203 (quotation marks omitted). Indeed, these rules apply only when—after utilizing all of our tools of statutory construction—"we can make no more than a guess as to what [the Legislature] intended." *United States v. Wells*, 519 U.S. 482, 499 (1997) (quotation marks omitted); *see State v. Shepley*, 2003 ME 70, ¶ 15, 822 A.2d 1147 ("[T]he rule of strict construction of a penal law is subordinate to this other rule, that the judicial interpretation must be reasonable and sensible, with a view to effectuating the legislative design, and the true intent of the Legislature." (quotation marks omitted)). Because we conclude that the Legislature's intent to criminalize violations of "similar order[s] issued

M.R.S. § 4001(3); *see State v. Falcone*, 2000 ME 196, ¶ 7, 760 A.2d 1046 (explaining that a "narrow interpretation" of the word "residence" as contained in the protection from abuse order would "contravene[] the express statutory purpose of protecting the victim").

[¶20]   As discussed above, because the process and protections associated with the imposition of the Conditions Order are similar to those associated with Maine's temporary protection from abuse orders, permitting the State to prosecute Blum for violating the order will not violate his right to due process.  Therefore, we move from process to substance.  Still using the commonplace or ordinary meaning of "similar," we next review the Conditions Order to determine if it has "characteristics in common" with or is "alike in substance or essentials" to protection orders in Maine.  *Webster's* at 2120; *see Tenants Harbor Gen. Store, LLC v. Dep't of Envtl. Prot.*, 2011 ME 6, ¶ 9, 10 A.3d 722.

[¶21]   Two characteristics that are important to consider are the intended purposes and the effects of the orders.  *See* 19-A M.R.S. § 4001.  There can be no dispute that the intended purpose of the Conditions Order was to

---

by" courts from other jurisdictions, 19-A M.R.S. § 4011(1)(A), is apparent from the plain language of the statutes at issue, these rules do not apply.  *See Callanan*, 364 U.S. at 596 (explaining that the rule of lenity "only serves as an aid for resolving an ambiguity; it is not to be used to beget one").

provide protection for the victims of Blum's alleged threatening and domestic violence, and its effect was to prohibit him from possessing any dangerous weapons, at least until his arraignment. *See* New Hampshire Model Protocol at 35-36, 40-41. Thus, the intended purpose and effect of Blum's Conditions Order is "similar" to a "temporary, emergency, interim or final protective order," as all of these orders are intended to provide "victims of domestic abuse [the ability] to obtain expeditious and effective protection against further abuse." *See* 19-A M.R.S. §§ 4001(2), 4011(1)(A); New Hampshire Model Protocol at 35-36, 40-41.

[¶22] No language in section 4011(1)(A)—or elsewhere in the protection from abuse statutes—suggests that a "similar order" should be limited to an order from another jurisdiction that is the *same* or the *most* similar, or that a "similar order" must be *identical* to an order issued pursuant to the protection from abuse statutes. *See* 19-A M.R.S. §§ 4001-4014.[10] In 15 M.R.S. § 321(6) (2017), for example, the Legislature employed the term "similar order" when it criminalized the violation of "[p]rotective orders in crimes between family members." That statute provides that a "[v]iolation of a protective order or of any *similar order* issued by any court . . . of any other state . . . when the person has prior actual notice of the order, is a Class D crime."

---

[10] In contrast, 19-A M.R.S. § 4011(4) carves out a special category of violations for specific acts that violate "a protective order issued pursuant to section 4007."

15 M.R.S. § 321(6) (emphasis added). Pursuant to 15 M.R.S. § 321(2) (2017), a "court may issue a protective order if" (1) an individual "is charged with or convicted of a violation of," among other offenses, domestic violence assault, 17-A M.R.S. § 207-A (2017), or criminal threatening, 17-A M.R.S. § 209 (2017)— and Blum was charged with comparable crimes in New Hampshire; (2) "[t]he offender and the victim are family or household members"; and (3) "[t]he court finds that there is a likelihood that the offender may injure the health or safety of the victim in the future."[11]

[¶23] As section 321 explains, a "protective order may be a condition of release." 15 M.R.S. § 321(3) (2017). The Conditions Order applicable to Blum was issued in New Hampshire as a condition of his release after his arrest for criminal threatening and domestic violence. Orders issued pursuant to section 321 and those issued pursuant to Maine's protection from abuse statutes, 19-A M.R.S. §§ 4001-4014, have the same purpose and intended effect—the protection of victims. *See* 15 M.R.S. § 321(2)(C); 19-A M.R.S. § 4001(1)-(4).

---

[11] The category of persons "protected" by this statute, however, is narrower than the category encompassed by 19-A M.R.S. § 4005, which includes, among others, dating partners. It is not clear whether Blum and the alleged victims of his criminal threatening and domestic violence were "family or household members," 15 M.R.S. § 321(2)(B) (2017), as the New Hampshire Conditions Order indicates only that they were or had been cohabiting.

[¶24] Given that the purpose and effect of the Conditions Order is nearly identical to the purposes and effects of other "temporary, emergency, interim or final protective order[s]," 19-A M.R.S. § 4011(1)(A), available in Maine, it is no stretch to determine that these orders are "alike in substance or essentials," *Webster's* at 2120. The Legislature's use of the term "similar order," when considered alongside the statutory mandate that "court[s] shall liberally construe and apply this chapter to promote" the underlying purpose of "diligently enforcing *court orders that prohibit abuse*," 19-A M.R.S. § 4001(3) (emphasis added), indicates an unambiguous legislative intent to have section 4011(1) apply to court orders issued for the *purpose* of protecting victims. "[W]e must interpret the plain language by taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation." *Dickau*, 2014 ME 158, ¶ 21, 107 A.3d 621. Because a narrow interpretation of "similar order" in this context would contravene the Legislature's purpose of protecting victims of abuse, we conclude that the New

Hampshire Conditions Order is a "similar order" as the term is used in section 4011(1)(A).[12]

D.    Conclusion

[¶25]  The Conditions Order issued by a New Hampshire court official, which clearly notified Blum that he was prohibited from possessing any dangerous weapons, provided him with notice and an opportunity to be heard had he wished to challenge the conditions imposed by the order, and which was issued for the purpose of protecting Blum's alleged victims, is "similar" to a "temporary, emergency, interim or final protective order."  *See* 19-A M.R.S. §§ 4001, 4011(1)(A).  We conclude that the language "similar order issued by a court . . . of another state" is unambiguous and that the Conditions Order issued to Blum is a "similar order" as that term is used in section 4011(1)(A).

The entry is:

> Judgment vacated.  The indictment against Blum for Count 2, violation of a protective order (Class D), 19-A M.R.S. § 4011(1) (2017), is reinstated.  Remanded for further proceedings consistent with this opinion.

---

[12] Our decision in this case is narrow and limited only to whether the Conditions Order can subject Blum to prosecution pursuant to section 4011(1) for an alleged violation.  As mentioned *supra* n.6, we take no position on potential factual issues in this case, such as whether Blum violated the order or whether the Conditions Order was enforceable.

22

Kathryn L. Slattery, District Attorney, and Shira S. Burns, Asst. Dist. Atty. (orally), Prosecutorial District #1, Alfred, for appellant State of Maine

Joseph S. Mekonis, Esq. (orally), Law Offices of Joseph Mekonis, P.A., Saco, for appellee Roy Blum

York County Unified Criminal Docket docket number CR-2017-62

For Clerk Reference Only